**2025-1819**

# United States Court of Appeals
# for the Federal Circuit

---

**KING MAKER MARKETING, INC.,**

*Plaintiff-Appellant,*

*v.*

**UNITED STATES,**

*Defendant-Appellee.*

---

Appeal from the United States Court of International Trade,
Consol. Court No. 24-cv-00134, Judge Timothy M. Reif

---

**PRINCIPAL BRIEF OF PLAINTIFF-APPELLANT,
KING MAKER MARKETING, INC.**

---

John M. Peterson
  *Counsel of Record*
Patrick B. Klein
Sanzida Talukder
NEVILLE PETERSON LLP
55 Broadway, Suite 2602
New York, NY 10006
(212) 635-2730
jpeterson@npwny.com

Richard F. O'Neill
NEVILLE PETERSON LLP
701 Fifth Ave, Suite 4200-2159
Seattle, WA 98104
(206) 905-3648
roneill@npwny.com

July 29, 2025

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

## <u>CERTIFICATE OF INTEREST</u>

| | |
|---|---|
| **Case Number** | 25-1819 |
| **Short Case Caption** | King Maker Marketing, Inc. v. United States |
| **Filing Party/Entity** | King Maker Marketing, Inc. |

---

**Instructions:**

1. Complete each section of the form and select none or N/A if appropriate.

2. Please enter only one item per box; attach additional pages as needed, and check the box to indicate such pages are attached.

3. In answering Sections 2 and 3, be specific as to which represented entities the answers apply; lack of specificity may result in non-compliance.

4. Please do not duplicate entries within Section 5.

5. Counsel must file an amended Certificate of Interest within seven days after any information on this form changes. Fed. Cir. R. 47.4(c).

---

I certify the following information and any attached sheets are accurate and complete to the best of my knowledge.

Date: 07/29/2025

Signature: /s/ John M. Peterson

Name: John M. Peterson

| 1. Represented Entities. Fed. Cir. R. 47.4(a)(1). | 2. Real Party in Interest. Fed. Cir. R. 47.4(a)(2). | 3. Parent Corporations and Stockholders. Fed. Cir. R. 47.4(a)(3). |
|---|---|---|
| Provide the full names of all entities represented by undersigned counsel in this case. | Provide the full names of all real parties in interest for the entities. Do not list the real parties if they are the same as the entities.<br><br>☑ None/Not Applicable | Provide the full names of all parent corporations for the entities and all publicly held companies that own 10% or more stock in the entities.<br><br>☐ None/Not Applicable |
| King Maker Marketing, Inc. | | U.S. Tobacco Collective Inc.<br>Premier Manufacturing Inc. |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

☐    Additional pages attached

**4. Legal Representatives.** List all law firms, partners, and associates that (a) appeared for the entities in the originating court or agency or (b) are expected to appear in this court for the entities. Do not include those who have already entered an appearance in this court. Fed. Cir. R. 47.4(a)(4).

☐  None/Not Applicable          ☐  Additional pages attached

| | | |
|---|---|---|
| Maria E. Celis<br>Neville Peterson LLP | | |
| | | |
| | | |

**5. Related Cases.** Other than the originating case(s) for this case, are there related or prior cases that meet the criteria under Fed. Cir. R. 47.5(a)?

☐  Yes (file separate notice; see below)   ☑  No   ☐  N/A (amicus/movant)

If yes, concurrently file a separate Notice of Related Case Information that complies with Fed. Cir. R. 47.5(b). **Please do not duplicate information.** This separate Notice must only be filed with the first Certificate of Interest or, subsequently, if information changes during the pendency of the appeal. Fed. Cir. R. 47.5(b).

**6. Organizational Victims and Bankruptcy Cases**. Provide any information required under Fed. R. App. P. 26.1(b) (organizational victims in criminal cases) and 26.1(c) (bankruptcy case debtors and trustees). Fed. Cir. R. 47.4(a)(6).

☑  None/Not Applicable          ☐  Additional pages attached

| | | |
|---|---|---|
| | | |
| | | |

# TABLE OF CONTENTS

PAGE

CERTIFICATE OF INTEREST ........................................................... ii

TABLE OF CONTENTS ....................................................................v

TABLE OF AUTHORITIES ...............................................................vi

STATEMENT OF RELATED CASES ...............................................1

JURISDICTIONAL STATEMENT .....................................................1

STATEMENT OF THE ISSUES .........................................................2

SUMMARY OF THE ARGUMENT .................................................10

ARGUMENT....................................................................................13

I.      Standard of Review...................................................................13

II.     The CIT Failed to Interpret 19 U.S.C. § 1313(j)(2) In a Way to Prevent an Anomaly. .................................................................14

III.    Merchandise in Foreign Trade Zones is Not Subject to Customs Laws.......27

CONCLUSION ...............................................................................35

# TABLE OF AUTHORITIES

PAGE(S)

**Cases**

*A.T. Cross v. Sunil Trading Corp.*, 467 F. Supp. 47 (S.D.N.Y 1979) ...................27

*Aectra Ref. & Mktg Inc. v. United States*, 565 F.3 1364 (Fed. Cir. 2009) .............29

*Arbor Foods v. United States*, 97 F.3d 534 (Fed. Cir. 1996) ...............................34

*Arnold v. United States*, 13 U.S. 104 (1815) ..................................................15, 16

*Atlantic Cleaners and Dyers v. United States*, 286 U.S. 427 (1932).....................21

*Bailey v. United States*, 516 U.S. 137 (1995) ...........................................................22

*Bell BCI Co. v. United States,* 570 F.3d 1337 (Fed. Cir. 2009) .............................13

*BMW Mfg. Inc. v. United States*, 23 C.I.T 641 (1999)............................................28

*BMW Mfg. Inc. v. United States*, 241 F.2d 1357 (Fed. Cir. 2001)..................passim

*Cohn & Rosenberger v. United States*, 4 Ct. Cust. 378 (1913) .............................26

*Columbia Gas Dev. Corp. v. FERC*, 651 F.2d 1146 (5th Cir. 1987)......................23

*Cunard S.S. Co. v. Mellon*, 262 U.S. 100 (1923)..................................8, 14, 15, 16

*Dubin v. Unites States*, 599 U.S. 110 (2023) ..........................................................22

*Envt'l Def. v. Duke Energy Corp.*, 549 U.S. 561 (2007).......................................22

*Erienbaugh v. United States*, 409 U.S. 239 (1972) ................................................13

*Frazier v. McDonough*, 66 F.4th 1353 (Fed. Cir. 2023) ........................................25

*G.D. Searle & Co. v. Byron Chemical Co.*, 223 F. Supp. 172 (D.N.J 1963) ..........27

*Goodman Mfg. LP v. United States,* 69 F. 3d 505 (Fed. Cir. 1995) ......................28

*Guess? Inc. v. United States*, 944 F.2d 855 (Fed. Cir. 1991) .................................13

*Intercontinental Fibres, Inc. v. United States*, 64 C.C.P.A. 31 (1976)...................26

*Interport Inc. v. Magaw*, 135 F.3d 826 (D.C. Cir. 1998) ................................29, 30

*John V. Carr & Son, Inc., v. United States,* 55 C.C.P.A. 111 (1968)....................21

*John V. Carr & Son, Inc., v. United States,* 58 Cust. Ct. 809 (Cust. Ct. 1967).20, 33

*Klockner Inc. v. United States,* 590 F. Supp. 1266 (1984) ...........................8, 17, 19

*Lynteq Inc. v. United States*, 976 F.2d 693 (Fed. Cir. 1992) ..................................13

*Marbury v. Madison,* 5 U.S. 137 (1803)..................................................................24

*Mass. Department of Revenue v. Shek*, 947 F.3d 770 (11th Cir. 2020)..................13

*National Association of Manufacturers v. United States*, 10 F.4th 1279 (Fed. Cir, 2021) .......................................................................................10, 12, 26

*Nissan Motor Mfg. Corp. v. United Stares*, 884 F. 2d 1375 (Fed. Cir. 1989).........28

*Perots v. United States*, 19 F. Cas. 258 (Circuit, D. PA 1816)........................15, 16

*Pillsbury Co. v. United States*, 431 F.3d 1377 (Fed. Cir. 2005)............................ 5

*Pitsker v. Office of Personnel Management*, 234 F.3d 1378 (Fed. Cir. 2000)........25

*R.J. Reynolds Tobacco Co. v. Durham County,* 479 U.S. 130 (1986)....................32

*Sea-Land Services Inc. v. United States*, 566 U.S. 93 (2012) ................................13

*Spencer Importing & Trading Co. v. United States*, 2 Ct. Cust. 444 (1912) ..........26

*Tabacos de Wilson Inc. v. United States*, 40 Int'l Trade Rep (BNA) 1395
(Ct. Int'l Tr. 2018)..................................................................... 5
*Torrington Co. v. United States*, 17 C.I.T. 199 (1993) ........................17, 19, 25, 28
*Tropicana Prods. v. United States*, 16 C.I.T. 155 (1992) ......................................34
*United States v. Borden & Co.*, 308 U.S. 188 (1939) ............................................23
*United States v. Commodities Export Corp.*, 14 C.I.T. 166 (1990).................32, 33
*United States v. Damrak Trading* Co., 43 C.C.P.A. 77 (1956) .............................24
*United States v. United Geophysical Co.,* 38 C.C.P.A. 137 (1951)......................24
*Universal Electronics Inc. v. United States*, 112 F.3d 488 (Fed. Cir. 1997)...........14
*Universal Mercantile Co. v. United States,* 18 C.C.P.A. 441 (1931) ....................24
*Xerox v. Harris County*, 459 U.S. 145 (1982) ......................................................32
*Xianli Zhang v. United States*, 640 F.3d 1358 (Fed. Cir. 2011) ...........................23
*Yates v. United States*, 574 U.S. 528 (2015)........................................................21

**Statutes**

19 U.S.C. § 1313..............................................................................passim
19 U.S.C. § 1515.................................................................................... 6
19 U.S.C. § 1555......................................................................................33
19 U.S.C. § 1623......................................................................................20
19 U.S.C. § 1624......................................................................................20
19 U.S.C. § 1626......................................................................................19
19 U.S.C. § 66 ..........................................................................................20
19 U.S.C. § 81c.................................................................................passim
28 U.S.C. § 1295.................................................................................... 2
28 U.S.C. § 1581.................................................................................2, 6
28 U.S.C. § 2107.................................................................................... 1
28 U.S.C. § 2645.................................................................................... 1
31 U.S.C. § 9701......................................................................................20
Foreign Trade Zones Act of 1934, Pub. L. 73-397, 48 Stat. 998 (1934) .........passim
Miscellaneous Trade and Technical Corrections Act, Pub L. 108-429, 118
Stat. 2434, 2579 (Dec. 4, 2004).......................................................29
Trade Facilitation and Trade Enforcement Act of 2015, Pub, L. 114-126, 130
Stat. 122 (2016).............................................................................. 5

**Regulations**

15 C.F.R. Part 400 ..................................................................................34
19 C.F.R § 101.1.................................................................................passim
19 C.F.R § 172.22.................................................................................... 6

PAGE(S)

19 C.F.R. Part 146 ........................................................................9, 20

19 C.F.R. Part 190 ...........................................................................20

## Other Authorities

Antonin Scalia and Bryan Garner, The *Interpretation of Legal Texts*,
Thomson West 2012..................................................................13

Donald E. DeKieffer and George W. Thompson, *Political and Policy
Dimensions of Foreign Trade Zones: Expansion or the Beginning of the
End?* 18 Vanderbilt J. of Transnational Law 481 (1985) ....................34

Foreign Trade Zones – Admission of Foreign Merchandise. S. Rep. No. 81-
1107, 81 Cong., 1st Sess. (Sept. 26, 1949)........................................18

Sturm, *Customs Law & Administration* (3d ed. 1982)....................24, 26

U.S. Dep't Treasury: Foreign Trade Zones; Specialized and General
Provisions, 51 Fed. Reg. 5040 (Feb. 11, 1986)..................................20

Plaintiff-Appellant, King Maker Marketing, Inc., in accordance with Rules 28(a) and 32(a) of the Federal Rules of Appellate Procedure and the Rules of Practice of the U.S. Court of Appeals for the Federal Circuit, hereby submits its principal brief in this appeal.

## STATEMENT OF RELATED CASES

In accordance with Rule 47.5 of the Rules of Practice of the U.S. Court of Appeals for the Federal Circuit, counsel for Plaintiff-Appellant, King Maker Marketing, Inc., makes the following statement:

1. Counsel for Plaintiff-Appellant are not aware of any action, currently pending in the U.S. Court of International Trade, which will directly affect or be affected by this Court's decision in the instant appeal.

## JURISDICTIONAL STATEMENT

Plaintiff-Appellant, King Maker Marketing, Inc., ("KMM" or "Plaintiff-Appellant"), appeals from the final judgment of the U.S. Court of International Trade ("CIT" or "Trade Court") in *King Maker Marketing, Inc. v. United States*, Slip Op. 24-134, dated May 15, 2025. Appx6-Appx17.

Plaintiff-Appellant filed a timely notice of appeal on May 29, 2025, pursuant to 28 U.S.C. §§ 2107 and 2645(c), and Rule 4(a)(4) of the Federal Rules of Appellate procedure. The CIT possessed subject matter jurisdiction of this action pursuant to

28 U.S.C. § 1581(a), and this Court has appellate jurisdiction pursuant to 28 U.S.C. § 1295(a)(5). The appeal was docketed in this Court on May 30, 2025.

## STATEMENT OF THE ISSUES

1. Whether the U.S. Court of International Trade properly determined that the five-year period for filing 19 U.S.C. § 1313(j)(2) drawback claims, measured from the "date of importation" of the imported merchandise designated in the claim, had expired prior to filing of Plaintiff-Appellant's drawback claim, rendering the claim untimely?

2. Whether the U.S. Court of International Trade properly determined that the five-year period for seeking a refund of duties and taxes, specified in a Customs law, 19 U.S.C. § 1313(j)(2), was properly applied to Plaintiff-Appellant's imported designated merchandise during the time the merchandise was stored in a Foreign Trade Zone, and prior to the time Plaintiff-Appellant owed or paid any duties or taxes thereon.

## STATEMENT OF THE CASE

### I.  Plaintiff-Appellant Stores Designated Goods in a Foreign Trade Zone.

The paper-wrapped cigarettes which were designated in Plaintiff-Appellant's drawback claim arrived by vessel at the Port of Norfolk, Virginia, in three movements. First, on February 23, 2013, some 12, 997 kg of cigarettes arrived at the Port of Norfolk, Virginia, and were transported under an Immediate Transportation

("IT") Bond to the Port of Chicago, Illinois, where they were admitted into FTZ 31 with "nonprivileged foreign" status. The CF 214 Notice of Admission form reflects that zone status for these cigarettes was requested on February 25, 2013, and approved on February 28, 2013. <u>Second</u>, an additional 5,495 kg of cigarettes arrived at the Port of Norfolk on March 9, 2013, and were transported under IT bond to the Port of Chicago, where zone status was requested and approved on March 14, 2013. <u>Third</u>, another 6,439 kg of cigarettes arrived at the Port of Norfolk on April 20, 2013, and were transported under IT bond to the Port of Chicago, where zone status was requested and approved on April 26, 2013.

When the goods were admitted into the FTZ, there were no Customs entries filed, and no duties, taxes or fees were paid.

All of these cigarettes were withdrawn from the FTZ and entered for consumption on May 6, 2013, under cover of Chicago Consumption Entry 605-5547323-4, which was filed as a Type 06 entry—*i.e.,* signifying that the goods were withdrawn from FTZ 31, located in Madison, Illinois, for consumption. On the date the goods were withdrawn from the FTZ, Plaintiff-Appellant KMM filed a consumption entry with Customs and paid applicable duties, taxes and fees – the duties, taxes

and fees which would become the subject of KMM's 19 U.S.C. § 1313(j)(2) drawback claim. The cigarettes were classified under Harmonized Tariff Schedule of the United States (HTSUS) subheading 2404.20.80 as "paper-wrapped cigarettes."[1]

## II. Plaintiff-Appellant's Drawback Claim.

Less than five-years after the consumption entry was filed, and duties, taxes and fees paid—on May 5, 2018—Plaintiff-Appellant KMM, through its Customhouse broker, Customs Advisory Services Inc., filed drawback claim H52-0004901-4 with the New York/Newark Drawback Center, seeking 19 U.S.C. § 1313(j)(2) drawback of duties and excise taxes in respect of the subject cigarettes that were withdrawn from the FTZ.[2]

---

[1] Subheading 2404.20.80, HTSUS, provides for:

| | |
|---|---|
| 2402 | Cigars, cheroots, cigarillos and cigarettes, of tobacco or of tobacco substitutes: |
| | *       *       * |
| 2402.20 | Cigarettes containing tobacco |
| | *       *       * |
| | Other [than containing clove]; |
| 2402.20.80 | Paper-wrapped cigarettes |

Goods so classified are subject to duty at a rate of $1.05/kg + 2.3% *ad valorem*.

They are also subject to Federal Excise Tax ("FET") at a rate of $50.33 per 1000 "sticks."

[2] The delay between the filing of the import entry and the drawback claim is explained by changes to the drawback statute. Prior to enactment of Section 906 of

4

The drawback claim reflected May 6, 2013, as the date of importation of the designated merchandise. CBP audited the claim and determined that the dates of importation were the dates the goods arrived at the Port of Norfolk, and denied the claim as untimely filed.

Plaintiff-Appellant timely protested the denial of the drawback claim. Two years later, when Customs had taken no action to decide or even review the protest, Plaintiff-Appellant sought accelerated disposition of the protest pursuant to 19 U.S.C

---

the Trade Facilitation and Trade Enforcement Act of 2015 ("TFTEA") Pub, L. 114-126, 130 Stat. 122 (2016), substitution of goods under 19 U.S.C. § 1313(j)(2) was governed by a factors-based test of "commercial interchangeability," which was to some extent subjective and difficult to administer. *See e.g., Pillsbury Co. v. United States*, 431 F.3d 1377 (Fed. Cir. 2005). This was particularly true with respect to tobacco and tobacco products, where Customs declined to make "commercial interchangeability" determinations. TFTEA replaced the "commercial interchangeability" test with a more objective test, providing that imported and exported goods are substitutable for purposes of 19 U.S.C. § 1313(j)(2) drawback if they are classifiable in the same 8-digit subheading of the HTSUS. *See* 19 U.S.C. § 1313(j)(2)(b)(ii)(II). Congress, in TFTEA, gave the Treasury Department two (2) years (until February 23, 2018), to issue regulations concerning how the amount of drawback was to be calculated where the imported "designated," and exported "substituted," merchandise were of different values. The new tariff classification-based substitution rule became effective February 24, 2018.

When Treasury failed to issue the new regulations by the Congressionally-specified deadline, stakeholders brought suit in the CIT, which ordered Customs to publish the mandated regulations by December 17, 2018. *See Tabacos de Wilson Inc. v. United States*, 40 Int'l Trade Rep (BNA) 1395 (Ct. Int'l Tr. 2018).

§ 1515(b),[3] and 19 C.F.R § 172.22. When CBP failed to act within thirty days thereafter, the protest was *deemed denied*. KMM then timely filed suit in the CIT, which exercises exclusive subject matter jurisdiction pursuant to 28 U.S.C. § 1581(a).

### III. Proceedings at the Trade Court.

The United States moved pursuant to Rule 12(b)(6) of the Rules of the U.S. Court of International Trade (USCIT R.) to dismiss Plaintiff-Appellant's complaint for failure to state a claim, arguing that the subject drawback claim was untimely filed. Plaintiff-Appellant opposed the motion, asserting that the "date of importation," for purposes of calculating the five-year claim filing limitation in 19 U.S.C. § 1313(j)(2)(B), should commence on the date the goods were entered for consumption at the Port of Chicago, and duties, taxes and fees paid, rather than the date the goods arrived at the Port of Norfolk with intent to unlade. This result is dictated by the Foreign Trade Zones Act of 1934, Pub. L. 73-397, 48 Stat. 998 (1934) ("FTZ

---

[3] 19 U.S.C. § 1515(b) provides:

(b) Request for accelerated disposition of protest

A request for accelerated disposition of a protest filed in accordance with section 1514 of this title may be mailed by certified or registered mail to the appropriate customs officer any time concurrent with or following of such protest. For purposes of section 1581 of title 28, a protest which has not been allowed or denied in whole or in part within thirty days following the date of mailing by certified or registered mail of a request for accelerated disposition shall be deemed denied on the thirtieth day following mailing of such request.

Act"), codified at 19 U.S.C. § 81a – § 81u, which decrees FTZs to be an area outside the Customs Territory of the United States in which, by statute, the Customs laws do not operate. *See* 19 U.S.C. § 81a(c).

On May 15, 2025, the CIT granted the motion to dismiss, finding that the "dates of importation" for purposes of calculating the five-year filing limitation in 19 U.S.C. § 1313(j)(2)(B), were the dates the cigarettes arrived at the Port of Norfolk (before any duties, taxes, and fees were owed or paid), rather than the date the cigarettes were withdrawn from the FTZ for United States consumption (when the duties, taxes, and fees subject to the drawback claim at issue were owed and paid). Appx13. According to the lower court, "under Customs' regulations, the 'date of importation' for purposes of the drawback claim would be 'the date on which the vessel [carrying the merchandise] arrive[d] within the limits of a port in the United States with intent then and there to unlade such merchandise." Appx9 (citing 19 C.F.R § 101.1).[4]

To determine the "date of importation the Trade Court turned to the definition of "importation" in the Second Edition of *Black's Law Dictionary*, published in

_____

[4] As explained herein, the definitions in 19 C.F.R. § 101.1 are not absolute or immutable. The definitions are prefaced by language in the regulation providing (emphasis added):

As used in this chapter, the following terms shall have the meanings indicated unless **either the context in which they are used requires a different meaning** or a different definition is prescribed for a particular part or portion thereof:

1910,[5] which stated that "importation" is "[t]he act of bringing goods and merchandise into a country from a foreign country." Appx10. The Court then cited *Cunard S.S. Co. v. Mellon*, 262 U.S. 100, 122 (1923), to distinguish concepts of *importation* and *entry*, stating that "'[e]ntry through a customs house is not the essence of the act [of importation]." Appx10. Additionally, the Court examined the legislative intention on the distinction between importation and entry in the drawback statute, 19 U.S.C. § 1313(j)(2), ("[I]f there is, with respect to imported merchandise on which was paid any duty, tax, or fee imposed under Federal law upon entry or importation…"). Appx14. Although the Trade Court in *Klockner Inc. v. United States,* 590 F. Supp. 1266, 1273 (1984), clearly stated that the "Foreign Trade Zone is not within the Customs Territory of the United States," here, the court below utilized the legislative history of the FTZ Act to point out that "Congress considered FTZs to be 'within or adjacent to a port of entry.'" Appx12. The CIT thus held that "the 'date of importation' of the subject merchandise is the date on which that merchandise was unladen into the FTZ." Appx12.[6]

---

[5] The dictionary definition cited by the lower court predated the FTZ Act of 1934 by nearly a quarter century.

[6] The CIT's application of its proffered definition—holding that "importation" occurred when the imported cigarettes arrived at the Port of Norfolk with intent to unlade--conflicts with its holding because the admissions of the merchandise into the FTZ actually occurred several hundred miles from Norfolk, Virginia, and several days after the importing vessels arrived at the Port of Norfolk.

The lower court stated that Congress did not create any exceptions to the definition of "date of importation" for "merchandise admitted into FTZs," and that any inconsistency between the "plain readings of the FTZ Act and the substitution unused drawback statute" is "for Congress to resolve." Appx15. The CIT incorrectly held that since there are some U.S. Customs requirements set out at 19 C.F.R. Part 146 that apply to merchandise admitted into FTZs, "Customs regulations governing merchandise in an FTZ pertain even though the FTZ Act states that such merchandise is not 'subject to the customs laws of the United States.'" Appx16. The CIT cited to this Court's decision in *BMW Mfg. Corp. v. United States*, 241 F. 3d 1357, 1363 (Fed. Cir. 2001), to show that the customs laws that do not apply to merchandise in the FTZ are those relating to duties and taxes that typically "attach upon formal entry into the United States customs territory;" this interpretation was an attempt to read the two statutes harmoniously and show that there is no conflict between the FTZ Act's provision that goods may be admitted to a Foreign Trade Zone "without being subject to the customs laws of the United States," 19 U.S.C. § 81a(c), and the government's position that a Customs law, namely 19 U.S.C. § 1313(j)(2)(B) could be applied to merchandise stored in an FTZ. Appx16.

## SUMMARY OF THE ARGUMENT

Plaintiff-Appellant King Maker Marketing's appeal rests on two grounds.

First, the CIT, in holding that the five-year period to seek a refund of duties and taxes paid began to run *before* any duties or taxes were paid yields an absurd and anomalous interpretation of 19 U.S.C. § 1313(j)(2)(B). The CIT's reliance on the definition of "date of importation" in Section 101.1 of the Customs Regulations as the basis for its interpretation ignored the regulatory command that such definition applies "unless … the context in which [it is] used requires a different meaning," *see* 19 C.F.R. § 101.1. Its conclusion also ignores this Court's holding in *National Association of Manufacturers v. United States*, 10 F.4th 1279, 1282 (Fed. Cir, 2021) (finding that substitution unused merchandise drawback "involves the refund of duties, taxes and fees that were paid **upon importation."** (Emphasis added)). To hold that the period for seeking a refund of monies paid runs from *before* the date the monies are paid is inherently anomalous, particularly where the governing regulation gives the discretion – indeed, the direction – to depart from the given definition where context so requires.

Second, the Trade Court's decision effects a repeal by implication of that part of the FTZ Act which provides that goods stored in FTZs are not subject to the customs laws of the United States. *See e.g.,* 19 U.S.C. §§ 81a-81u. The FTZ Act provides in relevant part (emphasis added):

10

19 U.S.C. § 81c. Exemption from Customs Law of Merchandise Brought into Foreign Trade Zone

(a) Handling of merchandise in zone; shipment of foreign merchandise into customs territory; appraisal; reshipment to zone

Foreign and domestic merchandise of every description, except such as is prohibited by law, may, **without being subject to the customs laws of the United States**, except as otherwise provided in this chapter, be brought into a zone and may be stored, sold, exhibited, broken up, repacked, assembled, distributed, sorted, graded, cleaned, mixed with foreign or domestic merchandise, or otherwise manipulated, or be manufactured except as otherwise provided in this chapter, and be exported, destroyed, or sent into customs territory of the United States therefrom, in the original package or otherwise; but when foreign merchandise is so sent from a zone into customs territory of the United States it shall be subject to the laws and regulations of the United States affecting imported merchandise …

Despite the command in 19 U.S.C. § 81c that FTZ merchandise is not subject to the customs laws of the United States, the CIT's decision subjects goods in an FTZ to a customs law of the United States, specifically 19 U.S.C. § 1313(j)((2)(B). To appellant's knowledge, this case represents the first time a court has applied a Customs law to goods in an FTZ. That the FTZ may be located in, or adjacent to, a port of entry has no bearing on the proper operation of the Foreign Trade Zones Act. The FTZ is not considered to be part of the Customs Territory of the United States, and the customs laws simply do not apply to goods stored therein. 19 U.S.C. § 81c.

The Unused Merchandise Drawback Statute, 19 U.S.C. § 1313(j)(2), provides in relevant part:

19 U.S.C § 1313 – Drawback and Refunds

(j) Unused Merchandise Drawback

> &ast;  &ast;  &ast;

(2) Subject to paragraphs (4), (5), and (6), if there is, with respect to imported merchandise on which was paid any duty, tax, or fee imposed under Federal law upon entry or importation, any other merchandise (whether imported or domestic), that –

> &ast;  &ast;  &ast;

> (B) is, before the close of the 5-year period beginning on the date of importation of the imported merchandise and before the drawback claim is filed, either exported or destroyed under customs supervision;

Thus, a drawback refund may be claimed if substitutable merchandise is exported.

There is no disagreement between the parties that the imported and exported merchandise are both classifiable under the same 8-digit HTSUS subheading, and therefore "substitutable" for drawback purposes. The question is whether the five-year period for seeking a refund began to run *before* the duties and taxes for which refund is sought were paid. Given that the regulatory definition of "date of importation" is subject to departure where the context so requires, and given this Court's pronouncement that drawback is a refund of duties and taxes "paid upon importation," *see National Association of Manufacturers, supra,*, the Trade Court should have held that the five-years limit for claiming drawback in this case runs from the date the goods with withdrawn from the FTZ for consumption and duties, taxes and fees were paid thereon.

Legislative enactments that relate to the same subject matter are considered to be *in pari materia* and should be construed harmoniously. *See* Antonin Scalia and Bryan Garner, The *Interpretation of Legal Texts*, Thomson West 2012. Where two statutes are in apparent conflict, a reviewing court must interpret them harmoniously to give meaning to both. *Sea-Land Services Inc. v. United States*, 566 U.S. 93, 100 (2012); *Erienbaugh v. United States*, 409 U.S. 239, 243 (1972); *Mass. Department of Revenue v. Shek*, 947 F.3d 770, 777 (11th Cir. 2020). The CIT erred by defining the "date of importation" for purposes of the five-year drawback filing deadline as the date when the imported cigarettes arrived at the FTZ, rather than the date the cigarettes were withdrawn from the FTZ for consumption entry into the Customs Territory of the United States, which is the first time those goods became subject to the Customs laws and when they were first assessed with the duties and taxes for which a drawback is claimed.

## ARGUMENT

### I.    Standard of Review.

This Court reviews legal holdings *de novo* and examines factual findings for clear error. *Bell BCI Co. v. United States,* 570 F.3d 1337, 1340 (Fed. Cir. 2009). The Court also reviews the lower court's interpretation of statutory provisions *de novo* and without deference. *Lynteq Inc. v. United States*, 976 F.2d 693, 696 (Fed. Cir. 1992); *Guess? Inc. v. United States*, 944 F.2d 855, 857 (Fed. Cir. 1991). This Court

reviews decisions of the CIT denying motions for summary judgment, and granting cross-motions for summary judgment, *de novo*.

Where, as here, matters are resolved upon summary judgment, and there are no disputed factual issues, this Court's inquiry resolves entirely into one of law, which this Court reviews *de novo,* and without regard to any presumption of correctness which might otherwise attach to Customs' determination in liquidation. *See Universal Electronics Inc. v. United States*, 112 F.3d 488, 492 (Fed. Cir. 1997).

## II.  The CIT Failed to Interpret 19 U.S.C. § 1313(j)(2) In a Way to Prevent an Anomaly.

Historically, "importation" was considered to occur when goods by any means of transportation "arrive… within the Customs territory …with intent then and there to unlade the goods." *See* 19 C.F.R. § 101.1. The "Customs Territory" of the United States had traditionally been a term "used in a physical and not a metaphorical sense – [] it refers to districts having fixity of location and recognized boundaries." *Cunard S.S. Co. v. Mellon,* 262 U.S. 100, 122 (1923). The "Customs Territory of the United States" is currently defined as including only the 50 states, the District of Columbia, and Puerto Rico. 19 C.F.R. § 101.1. The Customs laws of the United States are fully operational within the Customs Territory of the United States.

In the nineteenth century, courts instructed that "[t]he arrival of a vessel at her port of destination with intent to land her cargo constitutes an importation." *Perots*

*v. United States*, 19 F. Cas. 258 (Circuit, D. PA 1816). In *Cunard SS Co. v. Mellon*, the Supreme Court further explained:

> Importation … consists in bringing an article into the country from outside. If there be an actual bringing in it is importation regardless of the mode in which it is affected. Entry through a custom house is not the essence of the act.

262 U.S. at 122. Plaintiff-Appellant agrees that "importation" is distinct from "entry." If goods enter the Customs Territory without intent to unlade them, "importation" has not yet occurred. Both physical arrival within port limits and intent to unlade are essential to constitute "importation."

"Importation" is the act which causes liability for duties and taxes to attach to the imported merchandise, and which subjects the imported merchandise to Customs laws of the United States. It is distinct from the concept of "entry," which follows importation and constitutes the accounting to CBP for the goods imported.

Historically, cargo arriving otherwise than by vessel (*i.e.,* by air or at a land border crossing), has been deemed imported when it enters the "Customs Territory," which it does immediately upon arrival. Vessel shipments are imported after they enter the Customs Territory and arrive at the port of unlading with the intent to unlade. In *Arnold v. United States*, 13 U.S. 104, 120 (1815), the Supreme Court indicated that:

> To constitute an importation as to attach rights to duties, it is necessary not only that there should be an arrival within the limits of the United States, and of a collection district, but also, within the limits of some

port of entry. This was expressly decided in the case of *United States v. Vowell*, 5 Cranch 168 (1809).

All of these venerable judicial pronouncements were issued before enactment of the Foreign Trade Zones Act of 1934, Pub. L. 73-397, 48 Stat. 998 (1934), codified at19 U.S.C. §§ 81a-81u. The 1934 Act authorized the establishment of designated locations physically within the United States which are treated as though they are outside the Customs Territory of the United States. *Id.* The Act further provides that goods arriving in United States ports and directed to an FTZ shall **not** be subject to the Customs laws of the United States while in the FTZ. *Id.* This means that contrary to the holdings in *Perots, Arnold* and *Cunard,* liability for duties and taxes is *not* fixed upon these goods at the time of arrival with intent to unlade.[7] Indeed, goods arriving at a United States port and directed to an FTZ are not subject to the Customs laws, nor liability for duties and taxes, until such time as they are withdrawn from the FTZ for domestic consumption. 19 U.S.C. § 81c(a). Goods which are exported from, or destroyed in, the FTZ, will never become subject to the Customs laws and regulations, nor to duty and tax assessments. The formulations set out in cases such as *Perots*, *Arnold,* and *Cunard*, have been displaced, in certain contexts at least, by subsequent legislation.

---

[7] Thus, for example, foreign-origin goods admitted to an FTZ may be exported therefrom without incurring liability for United States Customs duties and taxes.

Accordingly, the Foreign Trade Zones Act provides the "context" which requires that, in this case, the "date of importation" should not be considered the data a vessel arrives in port with intent to unlade. Unlike other cargo on the vessel, cargo bound for an FTZ is not brought within the "Customs territory" at that time.

This context ingeminates the question of whether the "date of importation" for purposes of calculating the time limit in 19 U.S.C. § 1313(j)(2)(B) should, in the case of FTZs, be defined as a time *before* the goods which are the subject of a drawback claim enter the "Customs territory of the United States," *before* the goods become "subject to the Customs laws of the United States," and *before* there is assessment or payment of any duties, taxes or fees which can be the subject of a claim for drawback. Yet the Trade Court's interpretation works these anomalous results.

Although the CIT agreed with the statement in *Klockner Inc. v. United States*, 8 C.I.T. 3, 12, (1984), that "[t]here is no question that ordinarily, and under the provision of the [FTZ Act] … a Foreign Trade Zone is not within the Customs Territory of the United States," the Court conflated Congress' prescription that FTZs be located "within or adjacent to a port of entry" to mean that FTZs are "within the limits of a port in the United States," and therefore, are subject to customs laws. Appx12. However, this conflation disregards both the legislative intention of the FTZ Act and the CIT's own decisions in *Klockner Inc. v. United States*, 8 C.I.T. 3, 12, (1984)*, and Torrington Co. v. United States*, 17 C.I.T. 199, 209 (1993) (holding goods stored in

FTZs are not subject to the antidumping laws). The FTZ Act clearly states that "each port of entry shall be entitled to at least one [foreign trade] zone but when a *port of entry* is located within the confines of more than one State such port of entry shall be entitled to a zone in each such States." 19 U.S.C. § 81a(b).

The Court misconstrued the legislative history. The full quote from Senate Report 81-1107 provides:

> A foreign-trade zone is an isolated, fenced off, and policed area within or adjacent to a port of entry where foreign merchandise may be landed, stored, repacked, sorted, mixed, or otherwise manipulated with a minimum of customs control and without customs bond. If such merchandise is brought into customs territory, it is subject to all customs laws and regulations.

*See* Foreign Trade Zones – Admission of Foreign Merchandise. S. Rep. No. 81-1107, 81 Cong., 1st Sess. (Sept. 26, 1949). Thus, Congress clearly distinguished FTZs from the "customs territory of the United States." Here, the lower court combined the phrases: "within or adjacent to a port of entry" (derived from the Senate Report above) and "within the limits of a port in the United States" (derived from the definition of "date of importation" quoted from 19 C.F.R § 101.1) to create a new interpretation of the "date of importation." Appx12.[8] If the regulatory definition

---

[8] The full quote from the Slip Opinion of the lower court is as follows: "An FTZ 'within or adjacent to a port of entry,' is thereby 'within the limits of a port in the United States." Appx12. The lower court combined phrases from two different sources.

and the quote from the Senate Report are read together correctly, the legislative intent shows that the date of importation should be construed as the date when the merchandise arrives within the Customs Territory, not the FTZ, because the FTZ is not within the Customs Territory.

Further, the CIT in *Klockner* and *Torrington* looked to the intention of the FTZ Act, which the court failed to do here. In *Klockner*, the Court emphasized the importance of the statutory purpose and legislative intent – both of which the CIT seemed to have ignored in this case. *Klockner Inc v. United States,* 590 F. Supp. at 1273.[9] The Court in *Torrington* did not find it necessary to determine whether the antidumping statute is a customs law but found that "it is absolutely clear that the antidumping duty statute is a 'law … affecting imported merchandise[,]' [and] [t]herefore, … finds that the Foreign Trade Zone statute on its face exempts foreign merchandise within a FTZ from the imposition of antidumping duties until that merchandise is brought into the U.S. Customs territory." *Torrington Co*, 818 F. Supp. at 1573. These decisions and the legislative history of the FTZ Act confirm that FTZs

---

[9] While the Court in *Klockner* acknowledged that FTZs are outside the Customs Territory of the United States, it held that pursuant to a Special Steel Arrangement entered into pursuant to 19 U.S.C. § 1626, Customs could decline to admit certain steel products into an FTZ for purposes of manipulation. This is unexceptional, as the FTZ Board has power to prohibit the introduction of merchandise into FTZs for manipulation. In any event, there is a critical difference between (i) *denying goods admission into an FTZ*; and (ii) *subjecting goods to the Customs laws after they have been admitted into an FTZ.*

are outside the Customs territory of the United States where the Customs laws do not operate.

The lower court also erred by concluding that the presence of Customs Regulations dealing with Foreign Trade Zones in 19 C.F.R. Part 146 implied the applicability of customs laws to those facilities and goods stored therein. Appx.13. Such a conclusion is unwarranted. The authority for *Treasury Decision 86-16*, which implemented current 19 C.F.R. Part 146, states that the regulations are issued under authority of 19 U.S.C. § 66 and § 1623 (administrative provisions giving the Secretary of the Treasury the power to prescribe rules and forms); the Foreign Trade Zones Act, 19 U.S.C. § 81a-81u; 19 U.S.C. § 1624 (a provision relating to bonds), and 31 U.S.C. § 9701 (a financial statute empowering agencies to charge fees for services). *See* U.S. Dep't Treasury: Foreign Trade Zones; Specialized and General Provisions, 51 Fed. Reg. 5040, 5050 (Feb. 11, 1986). None of these authorities state or imply that the customs laws may be applied to goods in FTZs.

The drawback regulations, 19 C.F.R. Part 190, do not define "date of importation" for drawback purposes. Customs has traditionally employed the regulatory definition set out at 19 C.F.R. § 101.1 and has deemed "importation" to be generally a transportation-based concept. However, the definition set out at 19 C.F.R. § 101.1 applies only unless the "context otherwise requires"—just as the court in *John V. Carr & Son, Inc., v. United States,* 58 Cust. Ct. 809, 813 (Cust. Ct. 1967), *aff'd,* 55

C.C.P.A. 111 (1968), noted that the traditional definition only applies "unless otherwise limited." This is a situation where the context – indeed, the law—requires a different definition of the "date of importation."

The FTZ Act provides the answer when it indicates that goods withdrawn from an FTZ only become subject to the customs laws when "sent from a zone into the Customs territory of the United States." 19 U.S.C. § 81c. In this case the imported "designated" cigarettes were sent from FTZ No. 31 into the Customs Territory of the United States on May 6, 2013, when a Type 06 consumption entry was filed, and the goods were withdrawn from the FTZ for consumption. It is at that point that the goods entered the "Customs Territory of the United States," became subject to the Customs laws, and were first subject to assessments of duty and tax.

This interpretation of "date of importation" is consistent with the context in which plaintiff's import transaction, and subsequent drawback claim, arise. "In law and in life … the same words, placed in different contexts, sometimes mean different things." *Yates v. United States*, 574 U.S. 528, 537 (2015). The Supreme Court has noted that "identical language may convey varying content when used in differing statutes, [and] sometimes even in different provisions of the same statute." *Id*.; *see Atlantic Cleaners and Dyers v. United States*, 286 U.S. 427, 433 (1932). Because statutes (and regulations) draw meaning from their context, "we will look not only to the word itself, but also to the statute and the surrounding scheme to determine

what meaning Congress intended." *Bailey v. United States*, 516 U.S. 137, 143 (1995). The Supreme Court has indicated that in interpreting statutes and regulations, it will "construe language in its context and in light of the terms surrounding it." *Dubin v. Unites States*, 599 U.S. 110, 118 (2023). "Context counts." *Envt'l Def. v. Duke Energy Corp.*, 549 U.S. 561, 576 (2007). The Trade Court in the instant case focused on the plain definitions of "importation," "date of importation," and "date of entry" without considering the context in which these words are being utilized. The Trade Court failed to interpret these words within the statute's purpose, and instead, attempted to mold the statute to fit these words' individualized definitions.

For instance, the lower court explains that the merchandise in an FTZ has been *imported* because the merchandise has been "brought into the United States" (based on the Court's definition of the FTZ, which it held incorrectly is located "within the ports of the United States"). Appx12. This conclusion disregards the very concept of the FTZ as a place for goods to be held pending a decision whether they are to be imported, exported, or even destroyed. Here, the unique context provided by the FTZ Act indicates that the "date of importation" should be defined as the date the imported cigarettes designated in Plaintiff-Appellant's drawback claim were withdrawn from FTZ No. 31 for consumption in the United States and assessed with duties and taxes.

This is evident from the language of 19 U.S.C. § 1313(j)(2), which operates on "imported merchandise **on which was paid** any duty, tax, or fee imposed under Federal law **upon entry or importation.**" (Emphases added). The statute concerns itself with merchandise on which duties or taxes have been paid and acknowledges that such payment may occur either on "entry" or "importation."

Two other rules of statutory construction favor Appellant's interpretation of the term "date of importation." The first is that apparently conflicting statutes should be construed harmoniously, with every provision of both statutes given effect if possible. *United States v. Borden & Co.*, 308 U.S. 188, 198 (1939). Where there are two acts upon the same subject, the rule is to give effect to both if possible. *Columbia Gas Dev. Corp. v. FERC*, 651 F.2d 1146 (5th Cir. 1987). "Repeal by implication" is strongly disfavored. It may only be allowed to occur where a latter statute cannot be construed harmoniously with an earlier statute. *Xianli Zhang v. United States*, 640 F.3d 1358 (Fed. Cir. 2011).

The lower court's construction of the term "date of importation" in effect works a partial repeal of the FTZ Act by holding that a Customs law of the United States – 19 U.S.C. § 1313(j)(2)(B) – operates on goods in the FTZ. Indeed, it absurdly begins the running of the drawback statute time limit before the very things on which the statute operates – "duties, taxes and fees" – come into existence. Appx16. Although the court recognized that its statutory construction of the FTZ

Act and the substitution unused drawback statute would lead to friction between the statutes, the CIT left it up to Congress to resolve the conflict between the readings. Appx15.

> It is emphatically the province and duty of the judicial department to say what the law is. Those who apply the rule to particular cases, must of necessity expound and interpret that rule. If two laws conflict with each other, the courts must decide on the operation of each.

*Marbury v. Madison,* 5 U.S. 137, 177 (1803). One of the Court's functions is to interpret the statutes before it, and there are "[v]arious rules or canons of construction have been developed by courts for the purpose of ascertaining legislative intent when a statute is not clear and unambiguous on its face." *See* Sturm, *Customs Law & Administration* § 32.4 (3d ed. 1982) (citing *United States v. Damrak Trading* Co., 43 C.C.P.A. 77 (1956) (overruled based on application of *ejusdem generis* and legislative history, but doctrine of *ejusdem generis* and using legislative history for statutory construction still prevails)); *see also, United States v. United Geophysical Co.,* 38 C.C.P.A. 137, 141 (1951); *Universal Mercantile Co. v. United States,* 18 C.C.P.A. 441 (1931). Not only has the lower court here incorrectly interpreted the FTZ Act and the substitution unused drawback statute, but it has also failed in its constitutional role to interpret statutes harmoniously.

Here, the Tariff Act of 1930 and the FTZ Act of 1934 are not in irreconcilable conflict. If the term "beginning on the date of importation of the imported merchan-

dise," as used in 19 U.S.C. § 1313(j)(2) is given proper contextual definition, as suggested by Plaintiff-Appellant—a definition adopted in prior decisions for several decades[10]—both laws are given effect. The period for claiming drawback of duties and taxes runs for five-years from the date the designated imported goods enter the Customs Territory of the United States and are assessed with duties and taxes. Under this interpretation, goods stored in an FTZ are not subject to a "customs law" of the United States.

The CIT's formulation of the drawback law, by contrast, runs contrary to the clear (and unconditional) Congressional command in the FTZ Act, 19 U.S.C. § 81c, that goods stored in an FTZ are outside the Customs Territory of the United States, and are not subject to the Customs laws of the United States. The CIT erroneously applies a Customs law, 19 U.S.C. § 1313(j)(2), to goods in an FTZ. Plaintiff-Appellant's interpretation avoids that result and gives full effect to both statutes.

The second maxim of statutory construction to be considered is that a statute should be construed so as to avoid absurd or anomalous results. *See Frazier v. McDonough*, 66 F.4th 1353, 1358 (Fed. Cir. 2023); *Pitsker v. Office of Personnel Management*, 234 F.3d 1378, 1383 (Fed. Cir. 2000). As this Court has noted, the essence of "drawback" under 19 U.S.C. § 1313 is the recovery of a sum **previously**

---

[10] *See e.g., Torrington Co. v. United States*, 17 C.I.T. 199 (1993).

**paid** to the government. *See National Assn. of Manufacturers v. Department of the Treasury*, 10 F.4th 1279 (Fed. Cir. 2021). "Unless the literal construction of a statute leads to an anomaly or is contrary to congressional intent, the statutory language must govern." Sturm, *Customs Law and Administration* § 32.4; *see also Intercontinental Fibres, Inc. v. United States*, 64 C.C.P.A. 31, 33 (1976). It is both absurd and anomalous to interpret a time limitation on recovery of duties and taxes paid as beginning to run *before those duties and taxes are paid*. Further, if the merchandise is in the FTZ for over five-years, according to CIT's interpretation, Plaintiff-Appellant would not ever be able to file a drawback claim. But these are precisely the absurd results which would follow from the CIT's interpretation. The object of the substitution unused merchandise status is "imported merchandise, on which was paid any duty, tax, or fee imposed under Federal law upon entry or importation"; and therefore, to apply a time limitation to recover a charge during a period before the charge is ever incurred, is inherently anomalous. "In the presence of ambiguity in a statute, the fact that inconsistent or absurd results may flow from one construction and not from another will often lead the court to adopt the latter as most likely expressing the legislative intent." Sturm, *Customs Law & Administration*, § 32.4 (citing *Cohn & Rosenberger v. United States*, 4 Ct. Cust. 378, 383, T.D. 33536 (1913); *Spencer Importing & Trading Co. v. United States*, 2 Ct. Cust. 444 T.D. 32201 (1912)).

## III. Merchandise in Foreign Trade Zones is Not Subject to Customs Laws.

The FTZ Act of 1934 authorized the designation of a number of areas and facilities which were to be treated as though they were outside the Customs Territory of the United States, and to which foreign-origin goods could be imported without "being subject to the Customs laws of the United States."[11] This has prompted more

---

[11] Goods stored in FTZs are not exempt from the operation of United States laws other than the Customs laws. *See e.g., A.T. Cross v. Sunil Trading Corp.*, 467 F. Supp. 47, 48 (S.D.N.Y 1979) (Lanham Act and statutes relating to trafficking in counterfeit goods); *G.D. Searle & Co. v. Byron Chemical Co.*, 223 F. Supp. 172, 174 (D.N.J 1963) (goods in FTZs not exempt from operation of United States patent laws). In *G.D. Searle,* the court quoted Congressional Record Remarks of Rep. Emmanuel Celler (D-NY), the author of the Foreign Trade Zones Act, stating:

> In reviewing the history of the Foreign Trade Zone Act of 1934 (19 U.S.C. §§ 81a-81u), I find nothing to indicate an intention on the part of Congress to insulate this patch of United States territory from the force of the patent laws. The exemption from customs duties is expressly stated in the Act (19 U.S.C §§81a-81u). The expression of Congressman Celler, author of the Act) then called the Free Port Bill), exempting the Foreign Trade Zone from customs duties alone is a typical remark of the sponsors, and significant. The Congressional Record of May 29, 1934 reports this pertinent portion of his statement defining a Foreign Trade Zone (Free Port):
>
> *              *              *
>
> It is subject a little within adjacent regions to all the laws relating to public health, vessel inspection, postal service, labor conditions, immigration, and indeed everything except the customs. The purpose of the free zone is to encourage and expedite that part of a nation's foreign trade which its government wishes to free from the restrictions instituted by customs duties.

recent court decisions to adopt a different definition of "importation" where FTZs are involved.

Thus, in *Nissan Motor Mfg. Corp. v. United Stares*, 884 F. 2d 1375, 1376 (Fed. Cir. 1989), this Court held that "a foreign trade zone is considered to be outside the Customs Territory of the United States." *See also Goodman Mfg. LP v. United States,* 69 F. 3d 505, 512 (Fed. Cir. 1995). As the Trade Court noted in *Torrington Co. v. United States*, 17 C.I.T. 199, 210 (1993), the importation "process occurs when merchandise formally enters the Customs Territory. **In the case of goods going through a FTZ, this occurs when the merchandise leaves the FTZ and enters the United States Customs Territory."** (Emphasis added). This is precisely the definition this Court must adopt in the instant case.

In *BMW Mfg. Inc. v. United States*, 23 C.I.T 641 (1999), aff'd, 241 F.2d 1357 (Fed. Cir. 2001), the court considered assessment of the import Harbor Maintenance Tax ("HMT") on goods admitted into FTZs. The governing statute indicated that the HMT was to be paid upon "entry" into the United States. BMW, which maintained an FTZ subzone for manufacturing in South Carolina, challenged its liability for payment of the tax on goods admitted to the FTZ. Ultimately, this Court found that the HMT was a generalized federal charge on goods arriving at port, rather than a

tax or duty.[12] In doing so, the Court contrasted HMT and customs duties noting that the HMT is charged regardless of the destination, but customs duties are " … conditioned on formal entry into the customs territory of the United States." *BMW Mfg. Inc. v. United States*, 241 F.3d 1357, 1362 (Fed. Cir. 2001); *see also,* 19 C.F.R § 101.1. The Court also noted that the FTZ Act did provide a basis to define "date of importation" differently than in 19 C.F.R § 101.1, and that admission to an FTZ is not considered "importation" into the Customs Territory of the United States for purposes of the Customs laws, including for purposes of duties and various excise taxes.[13]

In *Interport Inc. v. Magaw*, 135 F.3d 826, 830 (D.C. Cir. 1998), the Court of Appeals for the District of Columbia Circuit, in an opinion by Judge (future Justice) Ruth Bader Ginsburg, spoke of removing guns from an FTZ "and thereby subjecting them to the import laws."

Here, when the cigarettes were admitted into FTZ No. 31, they did not enter into the Customs Territory. Unlike most goods, they did not become subject to duties

---

[12] Subsequent to this decision, Section 1557 of the Miscellaneous Trade and Technical Corrections Act, Pub L. 108-429, 118 Stat. 2434, 2579 (Dec. 4, 2004), amended the drawback statute to designate the HMT imposed on imports as a "tax" on goods imposed by reason of importation, and eligible for duty drawback. *See Aectra Ref. & Mktg Inc. v. United States*, 565 F.3 1364, 1370(Fed. Cir. 2009).

[13] The Harbor Maintenance Tax was, in any event, not contained in a Customs law, but rather in a provision of the Internal Revenue Code, 26 U.S.C. § 4461(e).

and taxes upon their initial arrival into a port, nor upon their admission to the FTZ. Rather the FTZ Act specifies that goods may be admitted to a zone **"without being subject to the customs laws of the United States,"** and further provides that "when foreign merchandise is so sent **from a zone into customs territory of the United States it shall be subject to the laws and regulations of the United States affecting imported merchandise**." 19 U.S.C § 81(c)(a) (emphasis added). This statutory directive has been recognized and enforced by several courts. *See e.g., BMW Mfg. Inc. v. United States, supra; Interport Inc. v. Magaw,* 135 F.3d 826, 830 (D.C. Cir. 1998).

Here, in rejecting Plaintiff-Appellant's definition of "date of importation," the CIT did what the law prohibits: it applied a Customs law, 19 U.S.C. § 1313(j)(2), to the designated merchandise during the time they were in the FTZ. This was incorrect. The cigarettes designated in Plaintiff-Appellant's drawback claim became "subject to the laws and regulations of the United States affecting imported merchandise" only when they were "sent from the zone to the Customs Territory of the United States." That occurred on May 6, 2013, when Plaintiff-Appellant filed Consumption Entry 605-5547323-4 at the Port of Chicago, and the imported cigarettes were assessed with duties taxes.

It follows that the drawback claim in this case, filed on May 5, 2018, was filed within the five-years period commencing on the date of importation of the goods,

and was timely. The Complaint in this action thus states a valid claim upon which the Trade Court may grant relief, and it was reversible error to hold otherwise.

The FTZ Act, 19 U.S.C § 81a, *et. seq.*, explains that foreign and domestic merchandise of every description "may, without being subject to the customs laws of the United States, except as otherwise provided in this chapter, be brought into a zone" for various purposes. The "Customs Territory of the United States" is defined as including "only the States, the District of Columbia, and Puerto Rico." 19 C.F.R. § 101.1. These are the locations in which the United States customs laws, including the duty drawback law (the oldest of all customs laws) operate. Certain legal consequences attach when goods are brought within the Customs Territory of the United States; or, in the case of goods arriving by vessel, when they are brought within the limits of a port with intent to unlade. These consequences do not attach to merchandise imported into an FTZ.

The FTZ Act itself speaks of bringing foreign goods into an FTZ for various purposes and states "but when foreign merchandise is so sent from a zone into Customs Territory of the United States, it shall be subject to the laws and regulations of the United States affecting imported merchandise." 19 U.S.C. § 81c(a). Imported merchandise destined for deposit into FTZs is typically moved directly from the port of unlading to the FTZ under bond, often using "direct delivery" procedures. These procedures exempt such goods, for a limited time, from being subject to the duty

assessment requirement which typically attaches upon arrival in the Customs Territory or unlading from a vessel within port limits until the foods are admitted to the FTZ.

By contrast, bonded warehouses—unlike FTZs—are considered to be within the Customs Territory of the United States, and merchandise stored therein is fully subject to the Customs laws. *See e.g., United States v. Commodities Export Corp*., 14 C.I.T. 166, 170-71 (1990) ("*Commodities Export Corp.*"). In *Xerox v. Harris County*, 459 U.S. 145, 150 (1982), the Supreme Court noted that "*imports* may be stored duty free in bonded warehouses." (Emphasis added). In *R.J. Reynolds Tobacco Co. v. Durham County,* 479 U.S. 130, 133-34 (1986), the Supreme Court indicated that goods stored in bonded warehouses are *importations* but simply are *not subject to duties unless withdrawn from the warehouse for consumption* in the United States. In holding that goods stored in bonded warehouses were "imported" merchandise, the court in *Commodities Export Corp.* quoted from the U.S. Customs Court's decision in *John V. Carr & Son, Inc.*, which held:

> The meaning of imported merchandise, except where a statute provides otherwise, has been construed by our appellate court as "*merchandise that has been brought within the limits of a port of entry from a foreign country* with the intention to unlade and the word '*importation*' as used in the tariff statutes, unless otherwise limited, means merchandise to which that condition or status has attached." [Italics quoted.] *Porto Rico Broker Co., Inc., et al. v. United States*, 23 CCPA 16, T.D. 47672; and *Procter & Gamble Manufacturing Co. v. United States*, 19 CCPA 415, T.D. 45678.

58 Cust. Ct. at 813 (emphasis in original), aff'd, 55 C.C.P.A. 111 (1968). Thus, in holding that goods stored in customs bonded warehouses were considered "imported," the court in *Commodities Export* concluded that the warehoused goods—having been brought within the Customs Territory and unladen—had been "imported" under the classic definition. But in citing *John V. Carr*, *supra,* the *Commodities Export Corp.* court acknowledged that the conventional definition of "imported" only applies "unless otherwise limited" and "except where a statute provides otherwise."

In this case, the limitation on use of the traditional definition of "importation" is provided by the FTZ Act, and particularly by 19 U.S.C. § 81c(a), which teaches that goods stored in an FTZ are not considered to be within the Customs Territory of the United States and, while in the FTZ, are not subject to the Customs laws of the United States. And 19 U.S.C. § 1313, which the Trade Court held to be operating on the cigarettes while they were stored in the FTZ, Appx14-15, is most definitely a Customs law.

Important distinctions between Customs bonded warehouses and FTZs abound. Their creation is authorized by different statutes: Section 555 of the Tariff Act of 1930, as amended, 19 U.S.C. § 1555, in the case of bonded warehouses, and the FTZ Act of 1934, 19 U.S.C. § 81a *et seq*., in the case of FTZs. Applications to establish Customs bonded warehouses are considered and approved exclusively by

local Customs officials, 19 C.F.R. Part 19, while applications to establish an FTZ are considered by the interagency Foreign Trade Zones Board in Washington, D.C., *see* 15 C.F.R. Part 400, which may limit zone operations for public interest or policy reasons.[14] Certain operations which may be authorized for FTZs, such as manufacturing new products for consumption in the United States,[15] are strictly prohibited in bonded warehouses.[16]

Thus, the concept of "importation" as applied to goods stored in Customs bonded warehouses is completely different from the concept of "importation" as applied to goods stored in an FTZ. The CIT's attempt to suggest otherwise is egregiously misleading and fails to address the context in which the merchandise designated in Plaintiff-Appellant's drawback claim came to enter the Customs Territory and first became subject to the Customs laws of the United States.

The Trade Court's decision in effect constitutes a partial repeal of the FTZ Act, specifically, that portion providing that goods in an FTZ are not subject to the Customs laws. The Supreme Court has decreed it a "cardinal rule" of statutory construction that "repeals by implication are disfavored." *Cook County v. United States*

---

[14] *See* Donald E. DeKieffer and George W. Thompson, *Political and Policy Dimensions of Foreign Trade Zones: Expansion or the Beginning of the End?* 18 Vanderbilt J. of Transnational Law 481 (1985).

[15] *See e.g., BMW Manufacturing Corp. v. United States,* 241 F.3d 1357, 1361 (Fed. Cir. 2001); *Arbor Foods v. United States*, 97 F.3d 534, 536 (Fed. Cir. 1996).

[16] *See Tropicana Prods. v. United States*, 16 C.I.T. 155, 156 (1992).

*ex rel. Chandler*, 538 U.S. 119, 132 (2003); *Posadas v. National City Bank*, 296 U.S. 497, 503 (1936). The CIT's decision should be vacated and this case remanded.

## CONCLUSION

For all of the foregoing reasons, Plaintiff-Appellant, King Maker Marketing, respectfully requests that this Court vacate the opinion and judgment of the CIT, hold that the correct "date of importation" that should be used to calculate the five-year claim filing period in 19 U.S.C. § 1313(j)(2), is May 6, 2013—the date the imported merchandise designated in Plaintiff-Appellant's drawback claim entered the Customs Territory of the United States and became subject to the assessment of duties and taxes, and remand this action to the Court of International Trade for further proceedings consistent with its holding.

Respectfully submitted.

    /s/ John M. Peterson
John M. Peterson
*Counsel of Record*
Patrick B. Klein
Sanzida Talukder
NEVILLE PETERSON LLP
55 Broadway, Suite 2602
New York, NY 10006
(212) 635-2730
jpeterson@npwny.com

Richard F. O'Neill
NEVILLE PETERSON LLP
701 Fifth Ave, Ste. 4200-2159
Seattle, WA 98104
(206) 905-3648
roneill@npwny.com

*Attorneys for Plaintiff-Appellant*

July 29, 2025

## CERTIFICATE OF COMPLIANCE WITH
## TYPE-VOLUME LIMITATIONS

I hereby certify that the foregoing Principal Brief of Plaintiff-Appellant, King Maker

Marketing, Inc., complies with the relevant type-volume limitation of the Federal

Rules of Appellate Procedure and Federal Circuit Rules. It was prepared using a

proportionally-spaced typeface and includes 8,822 words.


   /s/ John M. Peterson
        John M. Peterson

July 29, 2025

## CERTIFICATE OF SERVICE

I hereby certify that on this 29th day of July, 2025, I electronically filed the foregoing King Maker Marketing, Inc., with the Clerk of the Court for the United States Court of Appeals for the Federal Circuit through the Court's CM/ECF system. Participants in this case who are registered CM/ECF users will be served by the appellate CM/ECF system.

                                                     /s/ John M. Peterson
                                                     John M. Peterson

July 29, 2025

**UNITED STATES COURT OF INTERNATIONAL TRADE**

| | |
|---|---|
| **KING MAKER MARKETING INC.,** | |
| Plaintiff, | **Before: Timothy M. Reif, Judge** |
| v. | **Court No. 24-00134** |
| **UNITED STATES,** | |
| Defendant. | |

**JUDGMENT**

This case having been submitted for decision, and the court, after due deliberation, having rendered an opinion; now in conformity with that opinion, it is hereby

**ORDERED** that defendant's motion to dismiss for failure to state a claim is granted; and it is further

**ORDERED** that this action is dismissed with prejudice.

/s/      Timothy M. Reif
Judge

Dated: May 16, 2025
New York, New York

Slip Op.25-58

## UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| **KING MAKER MARKETING INC.,** | |
| Plaintiff, | |
| v. | **Before: Timothy M. Reif, Judge** |
| **UNITED STATES,** | **Court No. 24-00134** |
| Defendant. | |

## <u>OPINION</u>

[Granting defendant's motion to dismiss with prejudice.]

Dated: May 15, 2025

<u>John M. Peterson</u> and <u>Patrick B. Klein</u>, Neville Peterson, LLP, of New York, N.Y., argued for plaintiff King Maker Marketing Inc.  With them on the brief were <u>Richard F. O'Neill</u> and <u>Maria E. Celis</u>.

<u>Beverly A. Farrell</u>, Senior Trial Attorney, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, of New York, N.Y., argued for defendant United States. With her on the briefs were <u>Brett A. Shumate</u>, Acting Assistant Attorney General, <u>Patricia M. McCarthy</u>, Director and <u>Justin R. Miller</u>, Attorney-in-Charge, International Trade Field Office.  Of counsel were <u>Sabahat Chaudhary</u>, Office of the Chief Counsel, U.S. Customs and Border Protection, of Washington, D.C., and <u>Alexandra Khrebtukova</u>, Office of Chief Counsel, International Trade Litigation, U.S. Customs and Border Protection, of New York, N.Y.

Reif, Judge:  Before the court is the motion to dismiss of the United States ("defendant").  King Maker Marketing Inc. ("plaintiff") brings the instant action to contest the deemed denial of administrative protest 1001-22-101163 (the "Protest").  The Protest challenged the decision of U.S. Customs and Border Protection ("Customs") to deny as untimely plaintiff's various claims for substitution unused merchandise

drawback submitted pursuant to 19 U.S.C. § 1313(j)(2).  Compl. ¶ 1, ECF No. 5; Am.

Summons, ECF No. 15.

Defendant moves to dismiss plaintiff's complaint and argues that "the plain terms

of the drawback statute have not been met."  Def.'s Mot. Dismiss for Failure to State a

Claim Upon Which Relief Can Be Granted ("Def. Br.") at 1, ECF No. 20.  For the

reasons discussed below, the court grants defendant's motion to dismiss with prejudice.

## BACKGROUND

Plaintiff was the importer of 21 shipments of certain paper-wrapped cigarettes

(the "merchandise") that arrived in the United States and were admitted into a foreign-

trade zone ("FTZ") between September 4, 2012, and February 6, 2014.  Compl. ¶¶ 4, 6;

Def. Br. at 4.  No entry for consumption was filed, and no duties were paid, at the time

that the merchandise was admitted into the FTZ.  Compl. ¶ 7.

Plaintiff withdrew the various shipments of the merchandise from the FTZ for

domestic consumption between May 6, 2013, and September 3, 2018.  Compl. ¶¶ 6, 8;

Def. Br. at 5.  At the time of withdrawal of each shipment, plaintiff filed entries for

consumption with Customs and paid applicable duties, taxes and fees.[1]  Compl. ¶ 8;

Def. Br. at 5.

The merchandise was classified under Harmonized Tariff Schedule of the United

States ("HTSUS") subheading 2404.20.80, which covers "Cigarettes containing tobacco

. . . Other [than containing clove]; paper wrapped."  Compl. ¶ 8; Def. Br. at 5.  After entry

---

[1] Each of the entries was a Type 06 entry, which means that the merchandise was withdrawn from the FTZ for consumption.  Compl. ¶ 9; *see* U.S. Customs and Border Prot., *ACE Transaction Details* (last modified Jan. 23, 2024), https://www.cbp.gov/trade/automated/ace-transaction-details.

of the merchandise from the FTZ, plaintiff came into possession of, and exported, certain other cigarettes that were classified also under HTSUS subheading 2404.20.80. Compl. ¶ 10; Def. Br. at 5.  Plaintiff identified these other cigarettes as substitution merchandise that qualified for substitution unused merchandise drawback pursuant to 19 U.S.C. § 1313(j)(2).  Compl. ¶ 10; Def. Br. at 5.

Plaintiff filed its various substitution unused merchandise drawback claims between May 5, 2018, and February 15, 2019.  Compl. ¶¶ 6, 11; Def. Br. at 5.  Customs denied the various drawback claims on March 18, 2022.  Compl. ¶ 14; Def. Br. at 5.  Customs concluded that the claims were untimely because they were not filed before the close of the five-year period beginning on the date of importation of the imported merchandise.  Compl. ¶ 14; Def. Br. at 5-6.

On September 6, 2022, plaintiff filed timely the Protest of the denial of its various drawback claims.  Def. Br. at 6; *see* Protests and Entries, ECF No. 12-1.  On June 26, 2024, plaintiff requested accelerated disposition of the Protest pursuant to 19 U.S.C. § 1515(b).  Compl. ¶ 17; Def. Br. at 6.

Customs did not decide the Protest within 30 days following the mailing of plaintiff's request.  Compl. ¶ 18; Def. Br. at 6.  For that reason, the Protest was deemed denied by operation of law on July 27, 2024.  Compl. ¶ 18; Def. Br. at 6.

On August 2, 2024, plaintiff filed the instant action by filing summons and complaint.  Summons, ECF No. 1; Compl.

On November 27, 2024, defendant filed its motion to dismiss the complaint.  Def. Br.  On April 17, 2025, the Court heard oral argument.  Oral Arg. Tr., ECF No. 34.

## JURISDICTION AND STANDARD OF REVIEW

The Court exercises exclusive jurisdiction over all civil actions commenced under section 515 of the Tariff Act of 1930, 19 U.S.C. § 1515, to contest protests denied by Customs, 28 U.S.C. § 1581(a),[2] and reviews such actions de novo.  28 U.S.C. § 2640(a)(1) ("The Court of International Trade shall make its determinations upon the basis of the record made before the court . . . .").

In a USCIT Rule 12(b)(6) motion to dismiss for failure to state a claim, "any factual allegations in the complaint are assumed to be true and all inferences are drawn in favor of the plaintiff."  *Env't One Corp. v. United States*, 47 CIT __, __, 627 F. Supp. 3d 1349, 1355 (2023) (quoting *Amoco Oil Co. v. United States*, 234 F.3d 1374, 1376 (Fed. Cir. 2000)); *see* USCIT R. 12(b)(6).  In deciding a Rule 12(b)(6) motion, the court may consider documents "incorporated by reference or integral to the claim, items subject to judicial notice, [and] matters of public record."  *A & D Auto Sales, Inc. v. United States*, 748 F.3d 1142, 1147 (Fed. Cir. 2014) (alteration in original) (quoting 5B Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1357 (3d ed. 2004)).

"A court may properly dismiss a claim pursuant to [USCIT] Rule 12(b)(6) only if Plaintiffs' allegations of fact are not 'enough to raise a right to relief above the speculative level.'"  *VoestAlpine USA Corp. v. United States*, 46 CIT __, __, 578 F. Supp. 3d 1263, 1276 (2022) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  To survive a motion to dismiss, plaintiff's complaint must contain sufficient

---

[2] References to the U.S. Code are to the 2018 edition.  Further citations to the Tariff Act of 1930, as amended, are to the relevant portions of Title 19 of the U.S. Code.

factual material to "state a claim to relief that is plausible on its face." *Twombly*, 550

U.S. at 570.

## DISCUSSION

Parties agree that each of the 21 shipments of the merchandise was imported

more than five years before the filing date of its corresponding drawback claim. Compl.

¶ 6; Def. Br. at 3. 19 U.S.C. § 1313(r) requires that a drawback claim shall be filed "not

later than 5 years after the date on which merchandise on which drawback is claimed

was imported." For that reason, the sole issue before the court is whether the "date of

importation" pursuant to 19 U.S.C. § 1313 refers, in this case, to: (1) the date on which

the merchandise was imported; or (2) the date on which the merchandise was

withdrawn from the FTZ for consumption.

## I.      Legal framework

"A 'drawback' is a customs transaction involving the refund of any payments that

were made upon the importation of a good." *Nat'l Ass'n of Mfrs. v. Dep't of Treasury*

("*NAM II*"), 10 F.4th 1279, 1281 (Fed. Cir. 2021).

The type of drawback at issue in the instant case is the substitution drawback.

*See* 19 U.S.C. § 1313. "Simply put, a party is entitled to substitution drawback on the

taxes, fees, and duties . . . paid on imports when other merchandise is exported [or

destroyed] under the same [HTSUS] subheading in a one-to-one fashion." *Nat'l Ass'n*

*of Mfrs. v. U.S. Dep't of Treasury* ("*NAM I*"), 44 CIT __, __, 427 F. Supp. 3d 1362, 1364-

65 (2020) (footnotes omitted), *aff'd sub nom. NAM II*, 10 F.4th at 1279.

19 U.S.C. § 1313(j)(2) provides, in relevant part:

(2) Subject to paragraphs (4), (5), and (6), if there is, with respect to
imported merchandise on which was paid any duty, tax, or fee imposed

under Federal law upon entry or importation, any other merchandise (whether imported or domestic), that—

(A) is classifiable under the same 8-digit HTS subheading number as such imported merchandise;

(B) is, before the close of the *5-year period beginning on the date of importation of the imported merchandise* and before the drawback claim is filed, either exported or destroyed under customs supervision; and

(C) before such exportation or destruction—

(i) is not used within the United States, and

(ii) is in the possession of, including ownership while in bailment, in leased facilities, in transit to, or in any other manner under the operational control of, the party claiming drawback under this paragraph, if that party—

(I) is the importer of the imported merchandise, or

(II) received the imported merchandise, other merchandise classifiable under the same 8-digit HTS subheading number as such imported merchandise, or any combination of such imported merchandise and such other merchandise, directly or indirectly from the person who imported and paid any duties, taxes, and fees imposed under Federal law upon importation or entry and due on the imported merchandise (and any such transferred merchandise, regardless of its origin, will be treated as the imported merchandise and any retained merchandise will be treated as domestic merchandise);

then, notwithstanding any other provision of law, upon the exportation or destruction of such other merchandise an amount calculated pursuant to

regulations prescribed by the Secretary of the Treasury under subsection (l) shall be refunded as drawback.

19 U.S.C. § 1313(j)(2) (emphasis supplied).

In addition, § 1313(r)(1) provides that "[a] drawback entry shall be filed or applied for, as applicable, not later than 5 years after *the date on which merchandise on which drawback is claimed was imported*.  Claims not completed within the 5-year period shall be considered abandoned."  (emphasis supplied). Customs has interpreted "date of importation" to mean:

> [I]n the case of merchandise imported otherwise than by vessel, the date on which the merchandise arrives within the Customs territory of the United States.  In the case of merchandise imported by vessel, "date of importation" means the date on which the vessel arrives within the limits of a port in the United States with intent then and there to unlade such merchandise.

19 C.F.R. § 101.1.  And Customs has defined the "Customs territory of the United States" to include "only the States, the District of Columbia, and Puerto Rico."  *Id.*

The Foreign-Trade Zones Act of 1934 (the "FTZ Act"), 19 U.S.C. § 81a et seq., "grant[ed] to corporations the privilege of establishing, operating, and maintaining foreign-trade zones in or adjacent to ports of entry under the jurisdiction of the United States."  *Id.* § 81b(a).  Within these foreign-trade zones,

> Foreign and domestic merchandise of every description, except such as is prohibited by law, may, *without being subject to the customs laws of the United States*, except as otherwise provided in this chapter, be brought into a zone and may be stored, sold, exhibited, broken up, repacked, assembled, distributed, sorted, graded, cleaned, mixed with foreign or domestic merchandise, or otherwise manipulated, or be manufactured except as otherwise provided in this chapter, and be exported, destroyed, or sent into customs territory of the United States therefrom, in the original package or otherwise; *but when foreign merchandise is so sent from a zone into customs territory of the United States it shall be subject to the laws and regulations of the United States affecting imported merchandise* . . . .

19 U.S.C. § 81c(a) (emphases supplied).

Finally, "a governmental grant of a privilege or benefit," such as a drawback, "is to be construed in favor of the government and against the party claiming the grant." *Swan & Finch Co. v. United States*, 190 U.S. 143, 146 (1903); *see also United States v. Allen*, 163 U.S. 499, 504 (1896) (stating "the general principle that exemptions must be strictly construed, and that doubt must be resolved against the one asserting the exemption"); *Guess? Inc. v. United States*, 944 F.2d 855, 858 (Fed. Cir. 1991).

## II.  Analysis

The court concludes that the "date of importation" of the merchandise is interpreted properly to mean the date on which the merchandise was imported, even though the merchandise was admitted into an FTZ upon importation.

It is undisputed that the merchandise arrived by vessel.  Pl. Br., Exs. C-E (listing the importing vessels for the various shipments of the merchandise).  For that reason, under Customs' regulations, the "date of importation" for purposes of the drawback claim would be "the date on which the vessel [carrying the merchandise] arrive[d] within the limits of a port in the United States with intent then and there to unlade such merchandise."  19 C.F.R. § 101.1.

However, plaintiff argues that "the 'date of importation' in this case should be defined as the date that the imported, designated merchandise identified in plaintiff's drawback claim was withdrawn from the FTZ for domestic consumption, and first became 'subject to the laws and regulations of the United States affecting imported merchandise.'"  Pl. Br. at 4 (quoting 19 U.S.C. § 81c(a)).  Plaintiff maintains that the application of Customs' definition of "date of importation" for merchandise imported via

vessel "runs contrary to the clear (and unconditional) Congressional [sic] command in the Foreign Trade Zones Act [sic] . . . that goods stored in an FTZ are outside the Customs Territory of the United States and are not subject to the Customs laws of the United States." *Id.* at 20.

To start, neither the substitution unused merchandise drawback statute nor the FTZ Act defines "importation" or "import." *See* 19 U.S.C. § 1313; *id.* §§ 81a-u. However, "[i]n interpreting the trade laws, courts frequently have relied on the ordinary meaning of 'importation.'" *United States v. Commodities Exp. Co.*, 14 CIT 166, 169, 733 F. Supp. 109, 112 (1990).

The second edition of *Black's Law Dictionary*, published in 1910, defines "importation" as "[t]he act of bringing goods and merchandise into a country from a foreign country."[3] *Importation*, *Black's Law Dictionary* (2d ed. 1910). And in 1923, the Supreme Court stated that "[i]mportation . . . consists in bringing an article into a country from the outside. If there be an actual bringing in it is importation regardless of the mode in which it is effected." *Cunard S.S. Co. v. Mellon*, 262 U.S. 100, 122 (1923); *see also May Co. v. United States*, 12 Ct. Cust. App. 266, 270-271 (1924); *Sterling Bronze Co. v. United States*, 12 Ct. Cust. App. 338, 340 (1924); *Kee Co. v. United States*, 13 Ct. Cust. App. 105, 109 (1925); *United States v. John V. Carr & Son, Inc.*, 58 Cust. Ct. 809, 813, 266 F. Supp. 175, 178 (1967). The Court in *Cunard* distinguished the

---

[3] The third edition, published three years after the enactment of the Tariff Act of 1930 and one year prior to the enactment of the FTZ Act, maintains the same definition of "importation." *See Importation*, *Black's Law Dictionary* (3d ed. 1933).

concepts of "importation" and "entry" when it stated that "[e]ntry through a customs house is not of the essence of the act [of importation]."[4]  *Cunard*, 262 U.S. at 122.

This Court has defined "entry" as "the process of filing documentation with Customs to allow Customs to determine whether the subject merchandise should be released from Customs' custody and, if so, what duties are due."  *Torrington Co. v. United States*, 17 CIT 199, 210, 818 F. Supp. 1563, 1573 (1993); *see also Entry*, *Black's Law Dictionary* (2d ed. 1910) ("The entry of imported goods at the custom house consists in submitting them to the inspection of the revenue officers, together with a statement or description of such goods, and the original invoices of the same, for the purpose of estimating the duties to be paid thereon.").  "In the case of imports going

---

[4] Indeed, the conceptual distinction between "importation" and "entry" dates to the early nineteenth century at the latest.  *See, e.g.*, *United States v. Vowell*, 9 U.S. 368, 369 (1810) ("The laws of the United States take a distinction between *importing and entering* . . . ."); *Arnold v. United States*, 13 U.S. 104, 110 (1815) ("By the collection law, and all the forms of manifest, entry, &c. it is clearly evinced that importation precedes entry."); *accord Perots v. United States*, 19 F. Cas. 258, 258 (C.C.D. Pa. 1816) ("[I]t is to be observed[] that there is no statute of the United States, nor any general principle of law, which requires an entry to be made, in order to render the importation complete."); *United States v. Lyman*, 26 F. Cas. 1024, 1028 (C.C.D. Mass. 1818) ("[I]mportation is not the making entry of goods at the custom house, but merely the bringing them into port, and so is complete before entry . . . .").

through a FTZ, [entry] occurs when the merchandise leaves the FTZ and enters the

U.S. Customs territory."[5]  *Torrington*, 17 CIT at 210, 818 F. Supp. at 1573.

    This Court has also stated that "[t]here is no question that ordinarily, and under

the provision of the [FTZ Act] . . . a Foreign Trade Zone is not within the Customs

Territory of the United States."  *Klockner Inc. v. United States*, 8 CIT 3, 12, 590 F. Supp.

1266, 1273 (1984).  Even so, the legislative history of the FTZ Act indicates that

Congress considered FTZs to be "within or adjacent to a port of entry."  *See, e.g.*, S.

Rep. No. 81-1107, at 1 (1949), *reprinted in* 1950 U.S.C.C.A.N. 2533, 2533 ("A foreign-

trade zone is an isolated, fenced off, and policed area within or adjacent to a port of

entry where foreign merchandise may be landed, stored, repacked, sorted, mixed or

otherwise manipulated with a minimum of customs control and without customs bond.").

An FTZ "within or adjacent to a port of entry," *id.*, is thereby "within the limits of a port in

the United States."  19 C.F.R. § 101.1.  Hence, the "date of importation" of the subject

merchandise is the date on which that merchandise was unladen into the FTZ.  For that

reason, Customs' interpretation of "date of importation" for merchandise in an FTZ as

---

[5] Plaintiff invokes the same quotation from *Torrington* in support of the proposition that the "Court has noted that the *importation* 'process occurs when merchandise formally enters the Customs territory.  In the case of goods going through [an FTZ], this occurs when the merchandise leaves the FTZ and enters the United States Customs territory." Compl. ¶ 25 (emphasis supplied) (quoting *Torrington Co. v. United States*, 17 CIT 199, 210, 818 F. Supp. 1563, 1573 (1993)); *see also* Pl. Br. at 12.

Plaintiff misreads *Torrington*.  The sentence that immediately precedes the quoted section of *Torrington* reads, in relevant part:  "[T]he regular customs laws of the U.S. . . . define *entry* as the process of filing documentation with Customs to allow Customs to determine whether the subject merchandise should be released from Customs' custody and, if so, what duties are due."  *Torrington*, 17 CIT at 210, 818 F. Supp at 1573 (emphasis supplied).  Indeed, the entire paragraph is devoted to the discussion of entry, not importation.  *See id.*

"the date on which the vessel arrives *within the limits of a port in the United States* with intent then and there to unlade such merchandise" comports with this legislative history. 19 C.F.R. § 101.1.

The court concludes that merchandise in an FTZ has still been imported, even if it is outside of the customs territory of the United States.  By entering the port and then traveling to an FTZ within or near that port, the merchandise has been brought into the United States from a foreign country and thereby imported.  *See Cunard*, 262 U.S. at 122.  Accordingly, the merchandise at issue here is classified properly as imported as of the date that it was admitted into the FTZ.

Turning to the language of the substitution unused drawback statute itself, the Supreme Court has stated that "where words are employed in a statute which had at the time a well-known meaning at common law or in the law of this country, they are presumed to have been used in that sense unless the context compels to the contrary." *Standard Oil Co. of N.J. v. United States*, 221 U.S. 1, 59 (1911).

As discussed, long-standing precedent demonstrates that "the date of importation is not the same concept as the date . . . of entry."  *Zojirushi Am. Corp. v. United States*, 40 CIT __, __, 180 F. Supp. 3d 1354, 1359 n.2 (2016).  And it is notable that any reference to this perennial conceptual distinction is absent from the plain language of § 1313.  *See* 19 U.S.C. § 1313.  When Congress drafted the substitution unused drawback statute, it decided specifically that the five-year period would begin with the date of importation.  The language is unambiguous.  And in doing so, Congress invoked importation, a centuries-old "term[] of art" that has maintained a consistent meaning since the early nineteenth century at the latest.  *See Morissette v. United*

*States*, 342 U.S. 246, 263 (1950) ("[W]here Congress borrows terms of art in which are accumulated the legal tradition and meaning of centuries of practice, it presumably knows and adopts the cluster of ideas that were attached to each borrowed word in the body of learning from which it was taken and the meaning its use will convey to the judicial mind unless otherwise instructed."); *see also United States v. Hansen*, 599 U.S. 762, 774 (2023).

Moreover, Congress enacted § 1313(j)(2) in 1984, over five decades after it enacted the FTZ Act.[6]  *See NAM I*, 44 CIT at __, 427 F. Supp. 3d at 1373 ("Congress has several times addressed the issue of drawback since enacting the substitution drawback provision, 19 U.S.C. § 1313(j)(2), in 1984.").  Congress explicitly distinguished "entry" and "importation" in the statute.  *See* 19 U.S.C. § 1313(j)(2) ("[I]f there is, with respect to imported merchandise on which was paid any duty, tax, or fee imposed under Federal law *upon entry or importation* . . . .").  Congress made this distinction in a 2004 amendment to § 1313(j), seven decades after the enactment of the FTZ Act.  *See* Pub. L. No. 108-429, § 1557, 118 Stat. 2434, 2579 (2004).  If Congress had wanted to align the five-year period with the date of entry in cases involving merchandise admitted into an FTZ, Congress would have done so.  In the Trade Facilitation and Trade Enforcement Act of 2015, Congress changed the time limit for drawback from three years to five years, but left unchanged the alignment of the time period with the date of importation.  *See* Pub. L. No. 114-125, § 906, 130 Stat. 122, 228 (2016).  And at no point in the decades since the enactment of §§ 1313(j)(2) and 1313(r) has Congress

---

[6] Moreover, Congress enacted § 1313(r) in 1993.  Pub. L. No. 103-82, § 632, 107 Stat. 2057 (1993).

carved out an exception for imported merchandise admitted into FTZs.  *See,* e.g., Pub. L. No. 116-260, § 601, 134 Stat. 1182, 2150 (2020).  When Congress uses two distinct terms, it is well settled that each is given its distinct meaning.  "[A] statute ought, upon the whole, to be so construed that, if it can be prevented, no clause, sentence, or word shall be superfluous, void, or insignificant."  *Duncan v. Walker*, 533 U.S. 167, 174 (2001) (quoting *Washington Mkt. Co. v. Hoffman*, 101 U.S. 112, 115 (1879)).

Plaintiff argues also that a plain reading of "date of importation" would produce "absurd or anomalous results."  Pl. Br. at 20.  Plaintiff asserts specifically that it "would be both absurd and anomalous to interpret a time limitation on recovery of duties and taxes paid as beginning to run *before* those duties and taxes are paid."  *Id.* at 21.

The court recognizes the potential for friction between plain readings of the FTZ Act and the substitution unused drawback statute.  However, any inconsistency would be for Congress to resolve.

Finally, plaintiff argues that "in denying [plaintiff's] protest, Customs did what the [FTZ] law prohibits: it applied a Customs law . . . to the designated cigarettes during the time they were in the FTZ."  *Id.* at 14.

Plaintiff's argument is not persuasive.  A number of U.S. customs requirements promulgated pursuant to certain provisions of customs law will by necessity apply to imports admitted to an FTZ.  *See, e.g.*, *Foreign Trade Zones; Specialized and General Provisions*, 51 Fed. Reg. 5,040, 5,040 (Feb. 11, 1986) (setting forth the "general provisions applicable to the administration of all zones and other specialized provisions applicable to subzones and zone sites"); *id.* at 5,040-41 ("Zones are established under the [FTZ Act], as amended (19 U.S.C. 81a-81u), and the general regulations and rules

of procedure of the Foreign-Trade Zones Board . . . .  Part 146, Customs Regulations (19 CFR Part 146), governs the admission of merchandise into a zone; the manipulation, manufacture, destruction, or exhibition in a zone; the exportation of merchandise from a zone; and the transfer of merchandise from a zone into the Customs territory."); 19 C.F.R. § 146.10 (authorizing the port director to examine merchandise "before or at the time of admission to a zone, *or at any time thereafter*" (emphasis supplied)); *id.* § 146.32(a)(1) (requiring the completion of a form and issuance of a permit to admit merchandise into an FTZ); *id.* § 146.51 (authorizing the port director to "segregat[e] . . . any zone status merchandise whenever necessary to protect the revenue or properly administer U.S. laws or regulations"); *id.* § 146.66 (regulating the transfer of merchandise from one FTZ to another).  As a consequence, Customs regulations governing merchandise in an FTZ pertain even though the FTZ Act provides that such merchandise is not "subject to the customs laws of the United States."  19 U.S.C. § 81c(a).

As the U.S. Court of Appeals for the Federal Circuit has stated, "the legislative history of § 81c(a) demonstrates that the exemption therein is targeted at *duties and taxes* that attach upon formal entry into the United States customs territory."  *BMW Mfg. Corp. v. United States*, 241 F.3d 1357, 1363 (Fed. Cir. 2001) (emphasis supplied) (citing S. Rep. No. 81-1107, at 3-4).  Accordingly, and contrary to plaintiff's proffered interpretation, there is no conflict between § 1313 and § 81c(a).  Some customs laws necessarily will apply to imports in an FTZ.  *See United States v. Borden Co.*, 308 U.S. 188, 198 (1939) ("It is a cardinal principle of construction that repeals by implication are not favored.  When there are two acts upon the same subject, the rule is to give effect to

both if possible.").  Further, and consistent with this conclusion, the application of the definition of "date of importation" in Customs regulations to substitution unused merchandise drawback claims regarding merchandise admitted into an FTZ "give[s] effect to both" statutes.  *Id.*

In sum, the court declines to define the "date of importation" of the merchandise to be the date of entry in the case of goods admitted into an FTZ.  Accordingly, plaintiff's arguments on undisputed facts are insufficient for plaintiff to "state a claim to relief that is plausible on its face."  *Twombly*, 550 U.S. at 570.

## CONCLUSION

For the reasons described above, it is hereby

**ORDERED** that defendant's motion to dismiss is **GRANTED** with prejudice. Judgment will enter accordingly.

/s/      Timothy M. Reif
Timothy M. Reif, Judge

Dated:  May 15, 2025
        New York, New York