# United States Court of Appeals For The Federal Circuit

KING MAKER MARKETING, INC.,

*Plaintiff-Appellant*,

—v.—

UNITED STATES,

*Defendant-Appellee*.

Appeal from the United States Court of International
Trade in Case No. 24-00134, Judge Timothy M. Reif

## BRIEF FOR DEFENDANT-APPELLEE, UNITED STATES

Brett A. Shumate
Assistant Attorney General

Patricia M. McCarthy
Director

Justin R. Miller
Attorney-In-Charge
International Trade Field Office

Beverly A. Farrell
Senior Trial Counsel
Civil Division, U.S. Dept. of Justice
Commercial Litigation Branch
26 Federal Plaza, Room 346
New York, New York 10278
Tel. No. (212) 264-9230
*Attorneys for Defendant-Appellee*

*Of Counsel*
Sabahat Chaudhary
Office of Assistant Chief Counsel
International Trade Litigation
U.S. Customs and Border Protection

Dated: September 11, 2025

## STATEMENT OF RELATED CASES

No other appeal in or from the present civil action has previously been before this or any other appellate court. The government is not aware of any related cases within the meaning of Federal Circuit Rule 47.5(b).

# TABLE OF CONTENTS

STATEMENT OF ISSUES ........................................................................ 1

STATEMENT OF THE CASE .................................................................. 1

    Statutory Background ..................................................................... 1

    Proceedings Below ......................................................................... 4

SUMMARY OF THE ARGUMENT ........................................................ 6

ARGUMENT .......................................................................................... 8

I.      STANDARD OF REVIEW ............................................................ 8

II.    THE TRIAL COURT PROPERLY CONSTRUED THE TERMS "IMPORTED" AND "IMPORTATION," 19 U.S.C. §§ 1313(j)(2) AND (r)(1), TO MEAN HAVING BEEN BROUGHT INTO THE UNITED STATES FROM A FOREIGN COUNTRY .................................................. 9

    A.    The Common Meaning And Judicial Interpretation Of The Terms "Imported" And "Importation" Undermine King Maker's Position .... 10

        1.    The common meaning of the terms imported and importation ........... 10

        2.    When Congress enacted the Foreign Trade Zone Act of 1934, it was operating in a landscape that had already defined "importation ........... 11

        3.    Congress's distinction between "entry" or "importation" in section 1313(j)(1) precludes using the dates of King Maker's consumption entries as the start date for the 5-year period ......................................... 13

    B.    Neither The Context Of The Drawback Statute Nor The FTZ Act, Or The Definition in 19 C.F.R. § 101.1 Support King Maker's Position .... 17

    C.    The Trial Court Did Not Partially Repeal The FTZ Act ........................ 19

III.    THE FACT THAT MERCHANDISE IS ADMITTED INTO A FOREIGN TRADE ZONE DOES NOT NEGATE THE FACT THAT IT HAS BEEN IMPORTED AT OR ABOUT THE TIME OF ADMISSION INTO THE FTZ ......................................................................................... 19

CONCLUSION ................................................................................................ 23

## TABLE OF AUTHORITIES

<u>Cases</u>

*A&D Auto Sales, Inc. v. United States,*
  748 F.3d 1142 (Fed. Cir. 2014) ........................................................................ 8

*Arunachalam v. Int'l Business Machines Corp.,*
  759 Fed. Appx. 927 (Fed. Cir. 2019) ............................................................. 8

*Baude v. United States,*
  955 F.3d 1290 (Fed. Cir. 2020) ...................................................................... 15

*Bell Atl. Corp. v. Twombly,*
  550 U.S. 544 (2007) ......................................................................................... 8

*BMW Mfg. Corp. v. United States,*
  241 F.2d 1357 (Fed. Cir. 2001) ...................................................................... 21

*BMW Mfg. Corp. v. United States,*
  23 C.I.T. 641 (1999) ........................................................................................ 21

*Cunard S.S. Co. v. Mellon,*
  262 U.S. 100 (1923) ................................................................................... 11, 14

*Henry Hollander Co. v. United States,*
  22 C.C.P.A. 645 (1935) .................................................................................. 11

*Int'l Light Metals v. United States,*
  194 F.3d 1355 (Fed. Cir. 1999) ........................................................................ 2

*John V. Carr & Son, Inc. v. United States,*
  58 Cust. Ct. 809 (Cust. Ct. 1967) ..........................................................17-18

*Shell Oil Co. v. United States,*
  688 F.3d 1376 (Fed. Cir. 2012)................................................................1, 9

*Sioux Honey Ass'n v. Hartford Fire Ins. Co.,*
  672 F.3d 1041 (Fed. Cir. 2012)....................................................................8

*Standard Oil Co. of N.J. v. United States,*
  221 U.S. 1 (1911) ........................................................................................11

*Swan & Finch Co. v. United States,*
  190 U.S. 143 (1903)......................................................................................9

*Torrington Co. v. United States,*
  17 C.I.T. 199 (1993) ...............................................................................20-21

*United States v. Allen,*
  163 U.S. 499 (1896)......................................................................................9

*United States v. Commodities Export Co.,*
  733 F. Supp. 109 (Ct. Int'l. Trade 1990)...................................................11

*United States v. Hansen,*
  599 U.S. 762 (2023)....................................................................................12

## Statutes

19 U.S.C § 81a-81u (Foreign Trade Zones Act of 1934).............................13

19 U.S.C § 81a(c)....................................................................................19-20

19 U.S.C. § 1313..............................................................................................1

19 U.S.C. § 1313(j)(2) ............................................................................*passim*

19 U.S.C. § 1313(j)(2)(B) ......................................................................3, 9, 13

19 U.S.C. § 1313(r)(1) ...........................................................................*passim*

19 U.S.C. § 1484(a)(1)(A) ................................................................... 14

19 U.S.C. § 1505(a) ............................................................................ 15

19 U.S.C. § 1515(b) .............................................................................. 5

28 U.S.C. § 1581(a) .............................................................................. 4

**Rules and Regulations**

USCIT Rule 12(b)(6) ...................................................................... 4, 8

19 C.F.R. § 24.24(e)(2)(iii) ............................................................... 21

19 C.F.R. § 101.1 .............................................................................. 17

19 C.F.R. § 141.0a(a) .................................................................... 14-15

**Other Authorities**

BLACK'S LAW DICTIONARY, 755 (6th ed. 1990)................................................10

Bryan A. Garner, GARNER'S MODERN ENGLISH USAGE, 493 (4th ed. 2018) ............ 10

S. Rep. No. 905, 73d Cong., 2d Sess. 2 (1934) ............................................. 16

## STATEMENT OF THE ISSUES

I.     Whether the trial court properly dismissed appellant King Maker's complaint for failure to state a claim upon which relief may be granted when the court determined that King Maker's drawback claim failed to satisfy the plain terms of the drawback statute because the claim had not been completed within the 5-year period from the date of importation of merchandise.

II.    Whether the trial court properly determined that the 5-year period provided in 19 U.S.C. § 1313(r)(1) begins, including for goods that are admitted into a Foreign Trade Zone (FTZ), when goods are imported into the United States rather than entered for consumption from a FTZ.

## STATEMENT OF THE CASE

### A.    Statutory Background

This case concerns a privilege known as "drawback." *Shell Oil Co. v. United States*, 688 F.3d 1376, 1382 (Fed. Cir. 2012) ("drawbacks are a privilege, not a right."). Drawback is the payment by U.S. Customs and Border Protection (CBP or Customs) to a qualifying claimant of up to 99% of the taxes, duties, and fees paid on imported goods when the same or substitute goods are exported or are used in the manufacture of products that are exported, or when certain other specified conditions are met. *See generally* 19 U.S.C. § 1313. "The aim of the drawback duty statute is to encourage

domestic manufacture of articles for export and to allow those articles to compete fairly in the world marketplace." *Int'l Light Metals v. United States*, 194 F.3d 1355, 1366 (Fed. Cir. 1999).

However, a person seeking to obtain a drawback payment must timely file its claim with CBP. Specifically, section 1313(r)(1) provides that "[a] drawback entry shall be filed or applied for, as applicable, not later than 5 years after the date on which merchandise on which drawback is claimed was imported." If a claim is not completed within the 5-year period, it will be considered abandoned. *Id.*

In this action, King Maker sought to avail itself of the benefit of "substitution" drawback under 19 U.S.C. § 1313(j)(2) [1] for 21 shipments of paper-wrapped cigarettes

---

[1] Section 1313(j)(2) provides:

> (2)Subject to paragraphs (4), (5), and (6), if there is, with respect to imported merchandise on which was paid any duty, tax, or fee imposed under Federal law upon entry or importation, any other merchandise (whether imported or domestic), that—
>
> (A)is classifiable under the same 8-digit HTS subheading number as such imported merchandise;
>
> (B)is, before the close of the 5-year period beginning on the date of importation of the imported merchandise and before the drawback claim is filed, either exported or destroyed under customs supervision; and
>
> (C)before such exportation or destruction—
>
> (i)is not used within the United States, and
>
> (ii)is in the possession of, including ownership while in bailment, in leased facilities, in transit to, or in any other manner under the operational control of, the party claiming drawback under this paragraph, if that party—

imported from India and admitted into a FTZ between September 4, 2012 and February 6, 2014. Appx3. Section 1313(j)(2)(B) requires that *before the close of the 5-year period beginning on the date of importation of the imported merchandise* and before the drawback claim for the other merchandise is filed, that the other merchandise be exported or destroyed. (Emphasis added).

The drawback statute, including its 5-year claim limitation, makes no reference to Foreign Trade Zones and makes no exceptions for merchandise admitted into a FTZ.

---

(I)is the importer of the imported merchandise, or

(II)received the imported merchandise, other merchandise classifiable under the same 8-digit HTS subheading number as such imported merchandise, or any combination of such imported merchandise and such other merchandise, directly or indirectly from the person who imported and paid any duties, taxes, and fees imposed under Federal law upon importation or entry and due on the imported merchandise (and any such transferred merchandise, regardless of its origin, will be treated as the imported merchandise and any retained merchandise will be treated as domestic merchandise);

then, notwithstanding any other provision of law, upon the exportation or destruction of such other merchandise an amount calculated pursuant to regulations prescribed by the Secretary of the Treasury under subsection (l) shall be refunded as drawback. Notwithstanding subparagraph (A), drawback shall be allowed under this paragraph with respect to wine if the imported wine and the exported wine are of the same color and the price variation between the imported wine and the exported wine does not exceed 50 percent. Transfers of merchandise may be evidenced by business records kept in the normal course of business and no additional certificates of transfer shall be required.

## B.    Proceedings Below

On August 2, 2024, King Maker commenced an action at the U.S. Court of International Trade by asserting jurisdiction under section 1581(a) due to CBP's deemed denial of its administrative protest. Appx2. In that protest, King Maker challenged CBP's determination that its claims for substitution unused merchandise drawback pursuant to section 1313(j)(2) were untimely. Appx2-3. On November 27, 2024, the Government moved to dismiss the complaint under Rule 12(b)(6) for failure to state a claim because the facts alleged by King Maker in its complaint established that it had not satisfied the plain terms of the drawback statute. Appx3. The trial court heard oral argument on the fully submitted motion to dismiss on April 17, 2025. Appx4.

In its May 15, 2025 decision, the trial court found that King Maker imported 21 shipments of cigarettes that arrived in the United States and were entered into a FTZ between September 4, 2012 and February 6, 2014 without the filing of any entries for consumption. Appx3. King Maker withdrew shipments from the FTZ between May 6, 2013 and September 3, 2018 and filed entries for consumption with Customs and paid the applicable duties, taxes, and fees. Appx3.

King Maker filed substitution unused merchandise drawback claims between May 5, 2018 and February 15, 2019, which Customs denied as untimely because they had been filed more than 5 years after the importation of the designated imported merchandise. Appx4. King Maker timely filed a protest and sought accelerated

4

disposition of the protest pursuant to 19 U.S.C. § 1515(b). Appx4. Because Customs did not decide the protest within 30 days, the protest was deemed denied by operation of law on July 27, 2024. Appx4.

The trial court granted the government's motion to dismiss for failure to state a claim with prejudice because it concluded that the date of importation referenced in the drawback statute referred to the date of importation into the United States, even if the merchandise was subsequently admitted into an FTZ. Appx9. In reaching this conclusion, the trial court noted that the parties had agreed that each of the 21 shipments of the merchandise was imported more than five years before the filing date of its corresponding drawback claim. Appx6. The court further found that 19 U.S.C. § 1313(r) requires that a drawback claim shall be filed "not later than 5 years after the date on which merchandise on which drawback is claimed was imported." Appx6. The trial court then reviewed the drawback statute and the FTZ Act to determine how to interpret the date of importation for the subject merchandise. Appx6.

After surveying the common meaning of importation and how courts have construed that term, the trial court concluded that the date of importation is when the merchandise is brought into the United States from a foreign country, which did not require entry of the merchandise. Appx10-11. Rather, based on common meaning and judicial precedent, the trial court found that merchandise in an FTZ has still been imported, even if it is outside of the customs territory of the United States. Appx 13.

By entering the port and then traveling to an FTZ within or near that port, the merchandise has been brought into the United States from a foreign country and thereby imported. Appx13.

## SUMMARY OF THE ARGUMENT

The trial court properly dismissed King Maker's action with prejudice because King Maker failed to state a claim for relief that is plausible on its face. Appx17. There is no dispute that the 21 shipments of merchandise upon which King Maker's unused merchandise drawback claims were made had been imported more than five years before the drawback claims were filed. The drawback statute requires that such claims "shall be filed or applied for, as applicable, not later than 5 years after the date on which merchandise on which drawback is claimed was *imported*." 19 U.S.C. § 1313(r)(1) (emphasis added). The drawback statute does not tie the five-year deadline to any other operative event, nor does it include any special provisions for goods that have been entered from a FTZ.

The thrust of King Maker's argument is that because goods admitted to a FTZ are not subject to the customs laws of the United States, they are not importations. Yet, it is reality that renders the subject merchandise "importations." The goods at issue are foreign merchandise that came into the United States with the intention that they be unladen from the vessel transporting them and subsequently be admitted into a FTZ if permitted by customs. Foreign merchandise coming into the United States is the meaning (both common and in judicial precedent) of being imported, which

6

confers the status of being an importation. King Maker can point to nothing in the drawback statute or the FTZ Act that contextually requires the suspension of the imported status of its merchandise.

King Maker contends that the five-year period to complete its claims for unused substitution drawback should commence not at importation but at the time it withdrew its merchandise from the FTZ and entered it for consumption. The trial court correctly determined that importation and entry are distinct concepts with importation being the act of bringing goods into a country from a foreign country and entry the process of filing documentation with CBP to determine whether the goods should be released and, if so, the duties due. Further, Congress' inclusion of language such as "entry or importation," "date of importation of the imported merchandise," and "date on which merchandise on which drawback is claimed was imported" in the drawback statute leads to the inescapable conclusion that drawback claims for all imported merchandise, whether entered for consumption immediately after import or deposited into a FTZ and entered for consumption later, must be filed within 5 years of the date of importation not entry. If Congress intended the five-year deadline to run from entry, it would have said so.

For King Maker's position to prevail, the common meaning of the terms "imported" and "importation" would have to be ignored. So, too, would Congress's distinction, reflected in the phrase "entry or importation" in 19 U.S.C. § 1313(j)(2). King Maker's argument requires the suspension of logic to equate two separate and

distinct legal terms. The trial court correctly declined to engage in such an illogical approach to statutory interpretation. Accordingly, the trial court's judgment dismissing King Maker's action for failure to state a claim should be affirmed.

## ARGUMENT

## I. STANDARD OF REVIEW

This Court applies "a de novo standard of review to both a trial court's dismissal for lack of jurisdiction and a trial court's dismissal for failure to state a claim for which relief can be granted. *Sioux Honey Ass'n v. Hartford Fire Ins. Co.*, 672 F.3d 1041, 1049 (Fed. Cir. 2012). A motion to dismiss an action pursuant to Rule 12(b)(6) is "granted if the court, accepting all well-pleaded allegations in the complaint as true and viewing them in the light most favorable to the plaintiff, concludes that those allegations 'could not raise a claim of entitlement to relief.'" *Arunachalam v. Int'l Business Machines Corp.*, 759 Fed. Appx. 927, 931 (Fed. Cir. 2019) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 558 (2007)). Further, when reviewing a motion to dismiss, the Court "primarily consider[s] the allegations in the complaint, [and] may also look to 'matters incorporated by reference or integral to the claim, items subject to judicial notice, [and] matters of public record.'" *A&D Auto Sales, Inc. v. United States*, 748 F.3d 1142, 1147 (Fed. Cir. 2014) (quoting 5B Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1357 (3d ed. 2004)).

## II. THE TRIAL COURT PROPERLY CONSTRUED THE TERMS "IMPORTED" AND "IMPORTATION," 19 U.S.C. §§ 1313(j)(2) AND (r)(1), TO MEAN HAVING BEEN BROUGHT INTO THE UNITED STATES FROM A FOREIGN COUNTRY

Section 1313(r)(1) provides that "[a] drawback entry shall be filed or applied for, as applicable, not later than 5 years after the date on which merchandise on which drawback is claimed was imported." If a claim is not completed within the 5-year period, it will be considered abandoned. *Id.*

King Maker sought to avail itself of the benefit of "substitution" drawback under 19 U.S.C. § 1313(j)(2). Appx3. Section 1313(j)(2)(B) requires that *before the close of the 5-year period beginning on the date of importation of the imported merchandise* and before the drawback claim for the other merchandise is filed, that the other merchandise be exported or destroyed. (Emphasis added).

As we explained above, the trial court correct interpreted the terms "imported" and "importation", 19 U.S.C. §§ 1313(r)(1) and 1313(j)(2), to mean "[being] brought into the United States from a foreign country." Appx13. Importantly, "drawbacks are a privilege, not a right." *Shell Oil Co.*, 688 F.3d at 1382. As a governmental grant of a privilege or benefit, the drawback statute "is to be construed in favor of the government and against the party claiming the grant." *Id.* (quoting *Swan & Finch Co. v. United States*, 190 U.S. 143, 146 (1903)); *see also United States v. Allen*, 163 U.S. 499, 504 (1896) (noting "the general principle that exemptions must be strictly construed, and that doubt must be resolved against the one asserting the exemption").

King Maker erroneously contends that the trial court's interpretation of the drawback statute created an anomaly because "importation" occurs when goods arrive within the Customs territory.  Blue Br. at 14-26.

## A. The Common Meaning And Judicial Interpretation Of The Terms "Imported" And "Importation" Undermine King Maker's Position

King Maker's position that goods admitted to a FTZ should not be viewed as imported merchandise ignores the common meaning of the terms imported and importation.  Yet, instead, King Maker argues that cases construing these words in the context of bonded warehouses should be rejected.  Blue Br. at 33-34.  King Maker is wrong.  The common and judicial meaning of the term "importation," whether applied in the context of a bonded warehouse or to imported goods subsequently admitted to an FTZ remains the same.  And the fact that under the FTZ Act goods are not brought within the Customs territory does not provide a context that changes the meaning of importation.  Indeed, nothing in the FTZ Act excepts the status of foreign goods brought to the United States as being imported.

### 1.  The common meaning of the terms imported and importation

"A product that comes into a country from abroad is an *import*. The process of bringing it in is *importation*."  Bryan A. Garner, GARNER'S MODERN ENGLISH USAGE, 493 (4th ed. 2018) (emphasis in original).  Similarly, Black's Law Dictionary defies importation as "[t]he act of bringing goods and merchandise into a country from a foreign country."  BLACK'S LAW DICTIONARY, 755 (6th ed. 1990).

Courts that have construed the meaning of importation agree with this common meaning. For example, the Supreme Court in *Cunard SS Co. v. Mellon*, 262 U.S. 100, 122 (1923), found that importation "consists in bringing an article into a country from the outside." Further, if merchandise is brought in, it constitutes an "importation regardless of the mode in which it is effected." *Id.* Likewise, *United States v. Commodities Export Co.*, 733 F. Supp. 109, 112 (Ct. Int'l. Trade 1990) recognized that "Black's Law Dictionary defines importation as 'the act of bringing goods and merchandise into a country from a foreign country.'" And *Henry Hollander Co. v. United States*, 22 C.C.P.A. 645 (1935) explained that "[g]enerally, however, and unless the contrary clearly appears, the word 'importation' means 'the bringing of goods within the jurisdictional limits of the United States with the intention to unlade them.'") (Citation omitted.).

### 2. When Congress enacted the Foreign Trade Zone Act of 1934, it was operating in a landscape that had already defined "importation"

"[W]here words are employed in a statute which had at the time a well-known meaning at common law or in the law of this country, they are presumed to have been used in that sense unless the context compels to the contrary." *Standard Oil Co. of N.J. v. United States*, 221 U.S. 1, 59 (1911). When Congress promulgated the FTZ Act in 1934, the meaning of importation was well known. *See Cunard*, 262 U.S. at 122 determining that the term importation should be given its ordinary meaning: "bringing an article into a country from the outside." Similarly, when Congress used

the term "importation" in the drawback statute, "it presumably kn[ew] and adopt[ed] the cluster of ideas that were attached to each borrowed word." *United States v. Hansen*, 599 U.S. 762, 774 (2023). Indeed, King Maker recognizes that the common meaning of importation was well known before the FTZ Act. Blue Br. at 14-16.

Contrary to King Maker's argument that the FTZ Act provides the context of why goods brought from a foreign country to the United States would lose their identity as having been imported, the FTZ Act does contain any provision stating that goods entered into a FTZ are not to be considered importations. Instead, those goods are not subject to the customs laws of the United States for the primary purpose of avoiding the obligation of paying duties, fees, and taxes. And that makes sense. The imported foreign goods might never be "entered." Why have an importer pay estimated duties for goods in an FTZ when those goods may be exported or further manufactured in the zone thereby changing their classification or duty rate?

Thus, although under the FTZ Act goods imported into the United States are not subject to the customs laws, their status as imported is unaffected. The indisputable facts show that the merchandise covered by the designated import entries was imported into the United States, *i.e.*, brought here from another country, and then placed in a Free Trade Zone. Nothing in the FTZ Act provides that goods brought into the United States that are then placed into an FTZ lost their identity as "importations."

Instead, the FTZ alleviates the requirement that an importer file entry paperwork and tender duties. However, admission to a FTZ does require submission of CBP Form 214 (Application for Foreign-Trade Zone Admission And/Or Status Designation) in accordance with 19 U.S.C. § 81a-81u. The Form 214s for the subject merchandise are available at Appx18-24. Those forms require the applicant to state, among other things, the "importing vessel" and the "import date." *Id.* Thus, through its submission of Form 214s for the merchandise, King Maker has recognized that the subject merchandise is an importation consistent with the long standing meaning of that word.

3. **Congress's distinction between "entry" or "importation" in section 1313(j)(1) precludes using the dates of King Maker's consumption entries as the start date for the 5-year period**

King Maker suggests that perhaps in the context of FTZs the date of importation should not be used for measuring the 5-year time limit in section 1313(j)(2)(B) and (r)(1). Blue Br. at 17. King Maker strains to argue that the trial court combined the phrases "within or adjacent to a port of entry" (derived from a 1949 Senate Report) and "within the limits of a port in the United States" (derived from the definition of "date of importation" quoted from 19 C.F.R § 101.1) to create a new interpretation of the "date of importation." Blue Br. 18-19. This is not so. Rather, the trial court simply observed that Customs' interpretation of date of importation comports with the legislative history from 1949. Appx12-13.

More importantly, after noting that neither the drawback statute nor the FTZ Act defined "importation" or "import," the trial court recognized that courts frequently rely on the ordinary meaning of a term when construing its statutory meanings. Appx10. In so doing, the trial court found that the distinction between the concepts of entry and importation was significant in determining the proper meaning of importation for the drawback statute's 5-year time limit.

Congress's use of the phrase "entry or importation" in section 1313(j)(1) ("[i]f imported merchandise, on which was paid any duty, tax, or fee imposed under Federal law upon *entry or importation* . . . .") reveals that these words have different meanings. Otherwise, if these words were synonymous, Congress could have simply used "entry" rather than "importation" in setting the drawback deadline.

The trial court found that the Supreme Court in *Cunard* had distinguished the concepts of entry and importation when it stated that "[e]ntry through a customs house is not the essence of the act [of importation]." Appx11. Indeed, 19 U.S.C. § 1484(a)(1)(A) describes the phrase "make entry" as the "filing with [CBP] such documentation or, pursuant to an authorized electronic data interchange system, such information as is necessary to enable [CBP] to determine whether the merchandise may be released from custody of [CBP.]"[2] Further, it is entry that obligates the

_____

[2] Customs' regulation 19 C.F.R. § 141.0a(a) defines entry as:

> that documentation or data required by § 142.3 of this chapter to be filed with the appropriate CBP officer or submitted electronically to the

importer to pay the estimated duties on their *entered* goods. 19 U.S.C. § 1505(a).[3]  It is this obligation which is avoided when an importer places its merchandise in an FTZ.

This Court has noted that one of the most basic interpretive canons is that "a statute or regulation 'should be construed so that effect is given to all its provisions, so that no part will be inoperative or superfluous, void, or insignificant[.]'" *Baude v. United States*, 955 F.3d 1290, 1305 (Fed. Cir. 2020) (quoting *Corley v. United States*, 556 U.S. 303, 314 (2009)).  Thus, King Maker's consumption *entries,* which obligated them to file entry papers and pay estimated duties were not importations for the purpose of the drawback statute.

Nor can King Maker escape the trial court's proper statutory analysis of the relevant provisions by resort to its "anomaly" argument that construing "date of

---

Automated Commercial Environment (ACE) or any other CBP-authorized electronic data interchange system to secure the release of imported merchandise from CBP custody, or the act of filing that documentation. "Entry" also means that documentation or data required by § 181.53 or 182.53 of this chapter to be filed with CBP to withdraw merchandise from a duty-deferral program in the United States for exportation to Canada or Mexico or for entry into a duty-deferral program in Canada or Mexico.

[3] Section 1505(a) provides in relevant part:

Unless the entry is subject to a periodic payment referred to in this subsection or the merchandise is entered for warehouse or transportation, or under bond, the importer of record shall deposit with the Customs Service at the time of entry, or at such later time as the Secretary may prescribe by regulation (but not later than 12 working days after entry or release) the amount of duties and fees estimated to be payable on such merchandise.

importation," *i.e.*, the language Congress used in the drawback statute, to occur before the goods are subject to drawback, subject to the Customs laws, and assessed duties produces anomalous results. Blue Br. at 17. According to the drafters, the purpose of a foreign trade zone is:

> to encourage and expedite that part of a nation's foreign trade which its government wishes to free from the restrictions necessitated by customs duties. In other words, it aims to foster the dealing in foreign goods that are imported, not for domestic consumption, but for reexport to foreign markets and for conditioning, or for combining with domestic products previous to export.

S. Rep. No. 905, 73d Cong., 2d Sess. 2 (1934) (quoting the 1918 Report to the Chairman of the Commerce Committee by the Tariff Commission).

As such, American workers would benefit under the FTZ Act by working at a FTZ to repack, assemble, manipulate, or manufacture products from foreign goods imported into the zone, and American companies' goods might be similarly used in the zone to manufacture a new product for export. That Congress would want these benefits to occur within five years is not surprising. It does not help American workers or companies to have goods sitting in a FTZ indefinitely. If an importer wants the benefit of drawback, it needs to complete the process within five years of importation.

## B. Neither The Context Of The Drawback Statute Nor The FTZ Act, Or The Definition In 19 C.F.R. § 101.1 Support King Maker's Position

King Maker's reliance on 19 C.F.R. § 101.1 for the definition of date of importation is fatal to its claim. King Maker "*see*" cites to 19 C.F.R. § 101.1 to contend that "'importation' was considered to occur when goods by any means of transportation 'arrive . . . within the Customs territory . . . with intent then and there to unlade the goods." Blue Br. at 14. Section 101.1 defines "date of importation" for merchandise imported by vessel as when "the vessel arrives within the limits of a port in the United States with intent then and there to unlade such merchandise."

Here, there is no dispute that the merchandise arrived by vessel. Appx9. Thus, King Maker's recitation of section 101.1 supports the trial court's determination that the date of importation for purposes of the drawback statute was the date that the vessel carrying the merchandise arrived within the limits of the port. And, based on the undisputed facts in this case, those dates were more than five years before King Maker filed its substitution drawback claims.

King Maker further argues that section 101.1 applies unless the context requires otherwise and contends that the context and the law require a different definition here. Blue Br. at 20-21 (citing *John V. Carr & Son, Inc., v. United States*, 58 Cust. Ct. 809, 813 (Cust. Ct. 1967), *aff'd*, 55 C.C.P.A. 111 (1968). In *Carr*, the court was evaluating whether the value of baling presses manufactured in and imported from Canada should be reduced by the value of American motors incorporated into the

presses because the motors were returned to the United States, albeit as part of the entire product. *Id.* at 810. Section 500 of the Tariff Act in effect at the time required the appraiser to appraise "imported merchandise," but to segregate the value of the American input from the foreign input in connection with the American goods returned statutory provision. *Id.* at 813.

The *Carr* court explained that the meaning of "imported merchandise" is "merchandise that has been brought within the limits of a port of entry from a foreign country with intention to unlade, and the word importation as used in tariff statutes, unless otherwise limited, means merchandise to which that condition of status has attached." *Id.* (quotes and citation omitted). Thus, even though the imported article contained segregable American motors that were to be itemized in the appraisal, the context of the Tariff Act in effect at the time calling for the appraisement of "imported merchandise" meant that the item, as imported as a whole, would be appraised. *Id.* at 815-16.

The issue here is whether the subject merchandise, which was been brought within the limits of a port of entry from a foreign country with intention to unlade and subsequently admitted to a FTZ after its arrival from a foreign country should lose its status of being an importation because something in the Tariff Act limits the common and judicially recognized meaning of "importation" discussed above. The answer is no. And King Maker, other than reciting that that goods admitted to an FTZ are outside the customs laws of the United States, can provide no context from

the Tariff Act to negate the status of the goods as being imported, in other words, importations.

## C. The Trial Court Did Not Partially Repeal The FTZ Act

King Maker suggests that the trial court's decision operates as a partial rescission of the FTZ Act. Blue Br. at 34-35. King Maker is wrong. The trial court properly construed the meaning of importation in accordance with its common meaning while also observing that CBP's definition further supports its judgment that King Maker failed to timely file its drawback claims in accordance with section 1313(r)(1). Nothing in the FTZ Act contradicts the common meaning of the term importation. Therefore, the trial court could not have partially repealed the FTZ Act.

## III. THE FACT THAT MERCHANDISE IS ADMITTED INTO A FOREIGN TRADE ZONE DOES NOT NEGATE THE FACT THAT IT HAS BEEN IMPORTED AT OR ABOUT THE TIME OF ADMISSION INTO THE FTZ

King Maker contends that, because 19 U.S.C. § 81c(a)[4] allows for merchandise to be brought into a FTZ without being subject to the customs laws of the United States, unlading

---

[4] Section 81c(a) provides in pertinent part:

> Foreign and domestic merchandise of every description, except such as is prohibited by law, may, without being subject to the customs laws of the United States, except as otherwise provided in this chapter, be brought into a zone and may be stored, sold, exhibited, broken up, repacked, assembled, distributed, sorted, graded, cleaned, mixed with foreign or domestic merchandise, or otherwise manipulated, or be manufactured except as otherwise provided in this chapter, and be exported, destroyed, or sent into customs territory of the United States therefrom, in the original package or otherwise; but when foreign merchandise is so sent

merchandise from a vessel and admitting it into a FTZ located in the United States means

that it has not been imported. Blue Br. at 27-35. King Maker misapprehends the meaning

of importation. *See supra.*

To support its position, King Maker relies on *Torrington Co. v. United States*, 17

C.I.T. 199, 210 (1993) and argues that this Court "must adopt" the following language

from that case: "the importation 'process occurs when merchandise formally enters

the Customs Territory. **In the case of goods going through a FTZ, this occurs**

**when the merchandise leaves the FTZ and enters the United States Customs**

**Territory.'** (Emphasis added)." 17 C.I.T. at 210. The trial court specifically

addressed this point:

> [King Maker] invokes the same quotation from *Torrington* in
> support of the proposition that the "Court has noted that
> the *importation* 'process occurs when merchandise formally
> enters the Customs territory. In the case of goods going
> through [an FTZ], this occurs when the merchandise leaves
> the FTZ and enters the United States Customs territory."
> Compl. ¶ 25 (emphasis supplied) (quoting *Torrington Co. v.
> United States*, 17 CIT 199, 210, 818 F. Supp. 1563, 1573
> (1993)); *see also* Pl. Br. at 12.
>
> Plaintiff misreads *Torrington*. The sentence that immediately
> precedes the quoted section of Torrington reads, in
> relevant part: "[T]he regular customs laws of the U.S. . .
> .define *entry* as the process of filing documentation with
> Customs to allow Customs to determine whether the
> subject merchandise should be released from Customs'
> custody and, if so, what duties are due." *Torrington*, 17 CIT

---

from a zone into customs territory of the United States it shall be subject
to the laws and regulations of the United States affecting imported
merchandise:

> at 210, 818 F. Supp at 1573 (emphasis supplied). Indeed,
> the entire paragraph is devoted to the discussion of entry,
> not importation. *See id.*

Appx12. King Maker's invitation to this Court to misread the *Torrington* decision

should be declined for the same reasons that the trial court rejected it.

Nor does King Maker's reliance on *BMW Mfg. Inc. v. United States*, 23 C.I.T 641

(1999), *aff'd*, 241 F.2d 1357 (Fed. Cir. 2001) support its position. Blue Br. at 28-29.

BMW Manufacturing challenged CBP's regulation, 19 C.F.R. § 24.24(e)(2)(iii), which

mandated "the imposition and collection of the Harbor Maintenance Tax [HMT]

upon the admission of foreign merchandise into a FTZ." 23 C.I.T. at 642. There, the

lower court allowed the imposition of HMT because "Congress has not said expressly

that FTZ exemptions are applicable to the HMT." *Id.* at 644. In affirming the *BMW*

court, this Court's recognition that 19 U.S.C. § 81c(a) "exempt[s] *imported* merchandise

from the customs laws until formal entry into customs territory" supports our

position that the goods admitted into a FTZ are in fact imported merchandise. *BMW*,

241 F.2d at 1362.

King Maker's contention that using the definition of "date of importation"

applied customs law 19 U.S.C. § 1313(j)(2) to the designated merchandise during the

time they were in the FTZ is illogical. Blue Br. at 30-31. Section 1313(j)(2) was not

applied until 2018 because King Maker filed substitution drawback claims for

merchandise that left the FTZ and was entered for consumption in 2013.

The question here is simply whether the goods admitted to the FTZ are importations. For the reasons discussed above regarding the common meaning of imported and importation, goods admitted into a FTZ satisfy the status of being imported merchandise. Therefore, the five-year period for King Maker to file its claims for substitution drawback expired before King Make made its claims. As a result, King Maker could not make a claim for substitution unused drawback because it failed to meet the 5-year deadline under section 1313(r)(1). Because its claims were not completed within the 5-year period, they were abandoned. Section 1313(r)(1). Thus, King Maker failed to state a claim on which relief could be granted, and the trial court properly dismissed the action with prejudice.

## CONCLUSION

For the foregoing reasons, we respectfully request that judgment of the trial court be affirmed.

Respectfully submitted,

BRETT A. SHUMATE
Assistant Attorney General
Civil Division

PATRICIA M. McCARTHY
Director

By:     /s/ Justin R. Miller
JUSTIN R. MILLER
Attorney-In-Charge
International Trade Field Office

*Of Counsel*                          /s/ Beverly A. Farrell
SABAHAT CHAUDHARY            BEVERLY A. FARRELL
Office of Assistant Chief Counsel   Senior Trial Attorney
International Trade Litigation       Civil Division, Dept. of Justice U.S.
Customs and Border Protection       Commercial Litigation Branch
                                    26 Federal Plaza – Suite 346
                                    New York, NY 10278
                                    Tel. (212) 264-9230 or 0483
                                    Attorneys for Defendant-Appellee

Dated: September 11, 2025

## CERTIFICATE OF SERVICE

I hereby certify that on this 11th day of September, 2025, a copy of the foregoing Brief for Defendant-Appellee was filed electronically.  I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system.  Parties may access this filing through the Court's system.

/s/ Beverly A. Farrell
Senior Trial Attorney
International Trade Field Office
Civil Division
United states Department of Justice
26 Federal Plaza—Room 346
New York, New York 10278

CERTIFICATE OF COMPLIANCE PURSUANT TO FRAP 32(a)(7)(C)

```
_____
                                   )
KING MAKER MARKETING, INC.,        )
                                   )
            Plaintiff,             )
                                   )
      v.                           )          Appeal No. 25-1819
                                   )
UNITED STATES,                     )
                                   )
            Defendant.             )
_____)
```

I, Beverly A. Farrell, a senior trial attorney in the Office of the Assistant Attorney General, Civil Division, Commercial Litigation Branch, International Trade Field Office, who is responsible for the foregoing brief, relying upon the Microsoft Word word count feature of the word processing program used to prepare the brief, certify that this brief complies with the type-volume limitation under Rule 32(a)(7)(B), and contains 5,624 words.

/s/ Beverly A. Farrell
Beverly A. Farrell