2025-1819

# United States Court of Appeals
# for the Federal Circuit

---

**KING MAKER MARKETING, INC.,**

Plaintiff-Appellant,

*v.*

**UNITED STATES,**

Defendant-Appellee.

---

Appeal from the United States Court of International Trade,
Consol. Court No. 24-cv-00134, Judge Timothy M. Reif

---

**REPLY BRIEF OF PLAINTIFF-APPELLANT,
KING MAKER MARKETING, INC.**

---

John M. Peterson
  *Counsel of Record*
Patrick B. Klein
Sanzida Talukder
NEVILLE PETERSON LLP
55 Broadway, Suite 2602
New York, NY 10006
(212) 635-2730
jpeterson@npwny.com


October 2, 2025

Richard F. O'Neill
NEVILLE PETERSON LLP
701 Fifth Ave, Suite 4200-2159
Seattle, WA 98104
(206) 905-3648
roneill@npwny.com

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

## CERTIFICATE OF INTEREST

| | |
|---|---|
| **Case Number** | 25-1819 |
| **Short Case Caption** | King Maker Marketing, Inc. v. United States |
| **Filing Party/Entity** | King Maker Marketing, Inc. |

**Instructions:**

1. Complete each section of the form and select none or N/A if appropriate.

2. Please enter only one item per box; attach additional pages as needed, and check the box to indicate such pages are attached.

3. In answering Sections 2 and 3, be specific as to which represented entities the answers apply; lack of specificity may result in non-compliance.

4. Please do not duplicate entries within Section 5.

5. Counsel must file an amended Certificate of Interest within seven days after any information on this form changes. Fed. Cir. R. 47.4(c).

I certify the following information and any attached sheets are accurate and complete to the best of my knowledge.

Date: 07/29/2025

Signature: /s/ John M. Peterson

Name: John M. Peterson

| 1. Represented Entities. Fed. Cir. R. 47.4(a)(1). | 2. Real Party in Interest. Fed. Cir. R. 47.4(a)(2). | 3. Parent Corporations and Stockholders. Fed. Cir. R. 47.4(a)(3). |
|---|---|---|
| Provide the full names of all entities represented by undersigned counsel in this case. | Provide the full names of all real parties in interest for the entities. Do not list the real parties if they are the same as the entities.<br><br>☑ None/Not Applicable | Provide the full names of all parent corporations for the entities and all publicly held companies that own 10% or more stock in the entities.<br><br>☐ None/Not Applicable |
| King Maker Marketing, Inc. | | U.S. Tobacco Collective Inc.<br>Premier Manufacturing Inc. |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

☐ Additional pages attached

**4. Legal Representatives.** List all law firms, partners, and associates that (a) appeared for the entities in the originating court or agency or (b) are expected to appear in this court for the entities. Do not include those who have already entered an appearance in this court. Fed. Cir. R. 47.4(a)(4).

☐ None/Not Applicable   ☐ Additional pages attached

| | | |
|---|---|---|
| Maria E. Celis<br>Neville Peterson LLP | | |
| | | |
| | | |

**5. Related Cases.** Other than the originating case(s) for this case, are there related or prior cases that meet the criteria under Fed. Cir. R. 47.5(a)?

☐ Yes (file separate notice; see below)   ☑ No   ☐ N/A (amicus/movant)

If yes, concurrently file a separate Notice of Related Case Information that complies with Fed. Cir. R. 47.5(b). **Please do not duplicate information.** This separate Notice must only be filed with the first Certificate of Interest or, subsequently, if information changes during the pendency of the appeal. Fed. Cir. R. 47.5(b).

**6. Organizational Victims and Bankruptcy Cases**. Provide any information required under Fed. R. App. P. 26.1(b) (organizational victims in criminal cases) and 26.1(c) (bankruptcy case debtors and trustees). Fed. Cir. R. 47.4(a)(6).

☑ None/Not Applicable   ☐ Additional pages attached

| | | |
|---|---|---|
| | | |
| | | |

# TABLE OF CONTENTS

PAGE

CERTIFICATE OF INTEREST ................................................................... ii

TABLE OF CONTENTS.............................................................................v

TABLE OF AUTHORITIES .....................................................................vi

ANALYSIS ..................................................................................................1

I.    The CIT's Definition of "Date of Importation" Ignored the Context of the Instant Case and Unlawfully Applied a "Customs Law" to Goods in an FTZ. ................................................................................................3

II.   Plaintiff's Interpretation of "Date of Importation" Preserves the Integrity of Both Statutes, Whereas the CIT's Approach Effectively Nullifies the FTZ Act's Five-Year Limitations Period. ........................................9

III.  Avoiding Absurd and Anomalous Results Requires Finding that the Drawback Clock Cannot Start Before a Right Accrues. ...............................14

# TABLE OF AUTHORITIES

PAGE(S)

**Cases**

*Allstate Ins. Co. v. Cherry*, Civil Action No. ELH-11-2898, 2012 U.S. Dist.
LEXIS 57157 (D. Md. Apr. 23, 2012) ..................................................6

*Arellano v. McDonough*, 1 F.4th 1059 (Fed Cir. 2021) ............................17

*BMW Mfg. Inc. v. United States*, 241 F.2d 1357 (Fed. Cir. 2001) ............22

*Cada v. Baxter Healthcare Corp.*, 920 F.2d 446 (7th Cir. 1990)................16

*City of Pontiac Gen. Emps. Ret. Sys. v. MBIA, Inc.,* 637 F.3d 169 (2d Cir.
2011)......................................................................................18

*Corner Post Inc. v. Bd. of Governors, Federal Reserve*, 603 U.S. 799 (2024). 6, 16,
17

*Cunard S.S. Co. v. Mellon*, 262 U.S. 100 (1923).............................. 12, 13

*Deal v. United States,* 508 U.S. 129 (1993)......................................6

*Epic Sys. Corp. v. Lewis*, 584 U.S. 497 (2018).................................14

*Frazier v. McDonough*, 66 F.4th 1353 (Fed. Cir. 2023) ........................14

*Georgia v. Pennsylvania R. Co.,* 324 U.S. 439 (1945)..........................10

*Golden v. Garofalo*, 678 F.2d 1139 (2d Cir. 1982) ..............................6

*Goodman Mfg. L.P. v. United States*, 69 F.3d 505 (Fed. Cir. 1995) ...........2

*Marbury v. Madison,* 5 U.S. (1 Cranch) 137 (1803) ...........................3, 10

*Morton v. Mancari*, 417 U.S. 535 (1974) ......................................3, 10

*Nat'l Ass'n of Mfrs. v. Dep't of the Treasury*, 10 F.4th 1279 (Fed. Cir. 2021) . 19, 22

*Nissan Motor Mfg. v. United States*, 884 F.2d 1375 (Fed. Cir. 1989)..........2, 5

*Pitsker v. Off. of Pers. Mgmt.*, 234 F.3d 1378 (Fed. Cir. 2000) ................14

*Pohlman v. Bil-Jax Inc.,* 176 F.3d 1110 (8th Cir. 1999) ..........................6

*Posadas v. National City Bank*, 296 U.S. 497 (1936) ..........................10

*Precision Indus., Inc. v. Qualitech Steel SBQ, LLC*, 327 F.3d 537 (7th Cir.
2003)........................................................................................4

*Price v. Int'l Telephone & Telegraph Co.*, 651 F. Supp. 706 (S.D. Miss.
1986).......................................................................................8

*Siroonian v. Textron, Inc.*, 844 F.2d 289 (5th Cir. 1988) ........................8

*SPS Ltd. P'ship, LLLP v. Sparrows Point, LLC*, 122 F. Supp. 3d 239 (D. Md.
2015)........................................................................................6

*Tyler v. Cain*, 533 U.S. 656 (2001).............................................6

*United States v. Borden Co.*, 308 U.S. 188 (1939) ..............................3

*United States v. Memphis Cotton Oil Co.*, 288 U.S. 62 (1933)...............17

*United States v. Shewmaker*, 936 F.2d 1124 (10th Cir. 1991)..................4

*United States. v. Briggs*, 592 U.S. 69 (2020)..................................6

*Warner-Lambert Co. v. United States*, 425 F.3d 1381 (Fed. Cir. 2005) .................6

PAGE(S)

*Zanudio v. Haskins*, 775 F. Appx. 614 (11th Cir. 2019) ...........................................8

**Statutes**

19 U.S.C. § 1313 ...................................................... passim
19 U.S.C. § 81c ...................................................... passim
28 U.S.C. § 1581 ............................................................2
Act of June 18, 1934, Ch. 590, § 3, 48 Stat. 999 ....................................13

**Regulations**

19 C.F.R. § 101.1 .................................................. 3, 6, 7, 13

**Other Authorities**

Jenna M. Fischer, The Limits of Statutes of Limitations, 16 SW. U. L. REV.
    1 (1986) ...............................................................16

Plaintiff-Appellant, King Maker Marketing, Inc., in accordance with Rules 28(a) and 32(a) of the Federal Rules of Appellate Procedure and the Rules of Practice of the U.S. Court of Appeals for the Federal Circuit, hereby submits its Reply Brief in this appeal.

## <u>ANALYSIS</u>

This appeal involves the interaction of two statutory schemes – the duty drawback statute, codified at Section 313 of the Tariff Act of 1930, as amended, 19 U.S.C. § 1313, and the Foreign Trade Zones Act ("FTZ Act"), 19 U.S.C. §§ 81a-81u.

The drawback statute provides that a "substitution unused merchandise drawback will be paid if, within five (5) years from the "date of importation" of designated duty- or tax-paid merchandise, substitutable merchandise is exported. 19 U.S.C. § 1313(j)(2). It also provides that a claim for such drawback must be filed no later than five (5) years after the "date of importation" of the merchandise designated in the claim. *Id.*, § 1313(r)(1).[1]

The FTZ Act provides that imported merchandise may be stored in a Foreign Trade Zone "without being subject to the customs laws of the United States," 19 U.S.C. § 81c, including, presumably, the duty drawback provisions of the Tariff Act of 1930.

---

[1] Prior to 2016, the time for filing a drawback claim was measured from the date of exportation of merchandise. *See* 19 U.S.C. § 1313(r)(1) (2015).

Plaintiff-Appellant King Maker landed imported cigarettes at the Port of Nor-folk, Virginia, and arranged for them to be transported in bond to Foreign Trade Zone 36 near Chicago, Illinois, where they were admitted to the FTZ in "nonprivi-leged foreign" status. FTZs are designated areas which, for purposes of the Customs laws, are treated as though they are outside the "Customs Territory" of the United States. *Goodman Mfg. L.P. v. United States*, 69 F.3d 505, 512 (Fed. Cir. 1995); *Nis-san Motor Mfg. v. United States*, 884 F.2d 1375, 1376 (Fed. Cir. 1989). After spend-ing months in the FTZ, the imported cigarettes were withdrawn from the FTZ for consumption, and Federal Excise Taxes were paid thereon. Within 5 years from the date of withdrawal from the FTZ for consumption, King Maker filed its claims for substitution unused merchandise drawback, designating certain interchangeable ex-ported cigarettes as the basis of the claim. U.S. Customs and Border Protection ("CBP") denied the claims as untimely filed, and Plaintiff-Appellant's protest chal-lenging the failure to allow drawback was deemed denied. Plaintiff-Appellant chal-lenged that denial in the U.S. Court of International Trade, which exercised subject matter jurisdiction pursuant to 28 U.S.C. § 1581(a).

The question for the CIT was how, under the circumstances of this case, the term "date of importation" should be interpreted for purposes of 19 U.S.C. §§ 1313(j)(2) and 1313(r)(1). There is no statutory definition of that term.

**I.    The CIT's Definition of "Date of Importation" Ignored the Context of the Instant Case and Unlawfully Applied a "Customs Law" to Goods in an FTZ.**

The Customs Regulations provide that "<u>unless ... the context in which [it is] used requires a different meaning</u>," the term "<u>date of importation</u>" means "<u>the date on which the vessel arrives within the limits of a port in the United States with intent then and there to unlade such merchandise</u>." 19 C.F.R. § 101.1 (emphases added). King Maker argued that to interpret "date of importation" in this case as being the date goods arrive at a port with intent to unlade," would create a conflict with the FTZ Act by applying Customs laws – *i.e.,* 19 U.S.C. §§ 1313(j)(2) and (r)(1) – to goods while they are still in an FTZ, in contravention of the FTZ Act. The facts of the case provided a "context" where, King Maker asserted, the term "date of importation" should be defined as the date the imported cigarettes were removed from the FTZ, entered for consumption, and Federal Excise Taxes paid thereon.

The lower court had a duty in this case to interpret the two statutes harmoniously, if possible, and in a way that does not work a partial repeal of a statute, in this case the FTZ Act. When two related statutes appear to conflict, courts have a duty to construe them harmoniously and give each effect. *Morton v. Mancari*, 417 U.S. 535, 551 (1974) ("The intention of the legislature to repeal must be clear and manifest.") (citing *United States v. Borden Co.*, 308 U.S. 188, 198 (1939)). Normally when two statutes conflict, courts interpret the more specific statute as an exception

3

to the more general statute. *United States v. Shewmaker*, 936 F.2d 1124, 1128 (10th Cir. 1991). To be clear, the duty of seeking a harmonious interpretation is a judicial one. *Precision Indus., Inc. v. Qualitech Steel SBQ, LLC*, 327 F.3d 537, 544 (7th Cir. 2003) (court has an obligation to construe two statutory provisions in such a way as to avoid conflicts between them, if such a construction is possible and reasonable). *see also Marbury v. Madison,* 5 U.S. (1 Cranch) 137 (1803) ("It is emphatically the province and duty of the judicial department to say what the law is. Those who apply the rule to particular cases, must of necessity expound and interpret that rule. If two laws conflict with each other, the courts must decide on the operation of each."). But the lower court declined to exercise its duty to interpret, stating only that:

> The court recognizes the potential for friction between plain readings of the FTZ Act and the substitution unused drawback statute. However, any inconsistency would be for Congress to resolve.

Appx14. This is incorrect.[2] The task of interpreting Congress' enactments, harmoniously if possible, lies with the court.[3] In abdicating its interpretive responsibility by effectively leaving a statutory conflict unresolved, the lower court worked a partial

---

[2] In this case, adopting a context-based interpretation of the term "date of importation" as the date the imported cigarettes were withdrawn for consumption and taxes paid thereon, would have avoided conflict.

[3] Indeed, where a court can construe two Congressional enactments harmoniously, there would be no "inconsistency ... for Congress to resolve." Appx14.

repeal of the FTZ Act, and – for the first time in history – subjected goods stored in an FTZ to the operation of a Customs law.

This Court should correct the Trial Court's dereliction, adopt Plaintiff-Appellant's contextually-based definition of "date of importation," reject the government's insistence on a dictionary-definition "plain meaning" approach to "date of importation" which disregards the crucial context provided by both the FTZ Act and the drawback statute (Govt. Br. 10-11), and remand this case with instructions that Plaintiff-Appellant King Maker Marketing's drawback claim be allowed.

As noted above, this case involves the collision of two statutes. Defining "date of importation" as the date goods are brought within a port with intent to unlade, as the CIT did here, results in the application of the substantive provisions of the drawback statute (19 U.S.C. § 1313(j)(2)), and its time limitations (19 U.S.C. § 1313(r)(1)), to goods stored in an FTZ – working a partial repeal of the FTZ Act, 19 U.S.C. §§81a-81u.[4] Unconstrained by any statutory definition of "date of importation," and informed by a Customs regulation which indicates that an alternate meaning should be sought where "the context in which ["date of importation"] is

---

[4] Plaintiff is aware that this Court has ruled that goods in an FTZ are exempt from the assessment of duty if brought within the FTZ for one of the purposes approved in the FTZ Act. *See Nissan Motor Mfg. v. United States*, 884 F.2d 1375, 1376 (Fed. Cir. 1989). Storage of goods in an FTZ is one of the purposes allowed by the Act. *See* 19 U.S.C. § 81c.

used requires a different meaning," 19 C.F.R. § 101.1, the lower court should have sought to harmonize the statutes.

"The meaning of a statement often turns on the context in which it is made, and that is no less true of statutory language." *United States. v. Briggs*, 592 U.S. 69, 72-73 (2020); *see also Tyler v. Cain*, 533 U.S. 656, 662 (2001); *Deal v. United States,* 508 U.S. 129, 132 (1993). "Most statutes of limitations are context-specific." *Corner Post Inc. v. Bd. of Governors, Federal Reserve*, 603 U.S. 799, 848 (2024) (Jackson, J., dissenting). A determination of timeliness "depends on the specific factual context in which the statute of limitations applies." *SPS Ltd. P'ship, LLLP v. Sparrows Point, LLC*, 122 F. Supp. 3d 239, 243 (D. Md. 2015) (citing *Allstate Ins. Co. v. Cherry*, Civil Action No. ELH-11-2898, 2012 U.S. Dist. LEXIS 57157 (D. Md. Apr. 23, 2012); *Pohlman v. Bil-Jax Inc.*, 176 F.3d 1110 (8th Cir. 1999)). This Court has noted that where an enactment provides a definition applicable unless "special language or context otherwise requires," the party advocating a different definition bears the burden of establishing the existence of a special language or context. *Warner-Lambert Co. v. United States*, 425 F.3d 1381, 1384 (Fed. Cir. 2005). Thus, for example, in *Golden v. Garofalo*, 678 F.2d 1139, 1141 (2d Cir. 1982), the Second Circuit found that the "sale of business doctrine" "otherwise provided" a context in which the statutory definition of "security" did not operate.

In the instant case, the FTZ Act, and the facts of the case, provide the context which requires rejection of the definition of "date of importation" adopted by the lower court. It is undisputed that the imported goods, which Plaintiff-Appellant would ultimately designate as the basis for its 19 U.S.C. § 1313(j)(2) claim, were for a time stored in an FTZ. The FTZ Act squarely provides that goods may be stored in an FTZ "without being subject to the customs laws of the United States," 19 U.S.C. § 81c.

By its own terms, the definition of "date of importation" in 19 C.F.R. § 101.1 yields to context. Here, the context is the interplay of the drawback statute's timing rule with the FTZ Act's prescribed treatment of merchandise in a Zone. Applying § 101.1 reflexively, as the Government urges,[5] would frustrate Congress's purpose in both statutes: it would effectively punish use of an FTZ by running the drawback clock during the very period Congress intended the goods to be outside U.S. Customs jurisdiction. Nothing in the text of § 1313 suggests Congress intended to force FTZ users to export or enter their goods within five years of mere physical arrival or else lose drawback eligibility. To the contrary, Congress's aim in drawback is to

---

[5] The government argues that the purpose of the FTZ Act is to free part of the nation's foreign trade from restrictions necessitated by customs duties, and yet, in the same breath explains that there should still be a customs time limitation placed on the goods once they enter the Foreign Trade Zone. Govt Br. 16. The CIT's definition of "date of importation" disregards the purpose of an FTZ.

encourage exportation of imported goods by refunding duties, and the aim of FTZs is to facilitate warehousing and processing of goods without immediate duty consequences. These purposes are not at odds. They are reconciled by reading "date of importation" in § 1313(r)(1) to mean the date a product leaves the FTZ and formally enters U.S. customs territory (incurring duty and taxes) – the point at which the merchandise's journey as a duty-paid import truly begins. This contextual construction gives full effect to the FTZ Act and the drawback statute, while the Government's approach would nullify the benefit of the FTZ for drawback claimants who abide by the law.

The government argues that the time limitations found at 19 U.S.C. §§ 1313(j)(2) and 1313(r)(1) – part of a "customs law of the United States" – were operating on the goods while they were stored in the FTZ. Govt. Br. 14. "Limitations periods are an important part of the law." *Zanudio v. Haskins*, 775 F. Appx. 614, 617 (11th Cir. 2019). Statutory limitations are a part of the substantive law if they arise out of the same statute which grants a right (*e.g.,* 19 U.S.C. § 1313(j)(2)) and if the statute operates to extinguish the right after the time period has lapsed. *See e.g.,* 19 U.S.C. § 1313(r)(1); *Siroonian v. Textron, Inc.*, 844 F.2d 289, 292 (5th Cir. 1988); *Price v. Int'l Telephone & Telegraph Co.*, 651 F. Supp. 706, 708 (S.D. Miss. 1986).

This also puts paid the Government's argument that the time limitations in 19 U.S.C. § 1313(j)(2) and (r)(1) were not applied to Plaintiff-Appellant until 2018,

when its drawback claims were filed. Govt. Br. at 21. The Government freely admits that those time limitations were running against Plaintiff-Appellant's merchandise *while they were stored in the FTZ* – hence, <u>a Customs law was being applied against merchandise while in an FTZ, which the FTZ Act forbids</u>. Clearly then, the storage of Plaintiff-Appellant's imported merchandise in the FTZ creates a "context" which makes application of the traditional definition of "date of importation" inapplicable in this case.

## II.    Plaintiff's Interpretation of "Date of Importation" Preserves the Integrity of Both Statutes, Whereas the CIT's Approach Effectively Nullifies the FTZ Act's Five-Year Limitations Period.

The lower court's context-deaf definition of "date of importation" effects a partial repeat of the FTZ Act by applying a customs law to goods stored in an FTZ. Congress enacted the FTZ Act to encourage commerce by allowing importers to defer or avoid duties on goods stored or processed in zones until they leave the zone for domestic consumption. 19 U.S.C. § 81c(a) *et seq*. To that end, the FTZ Act expressly provides that merchandise admitted to a zone "may, <u>without being subject to the customs laws of the United States,</u> … be brought into a zone" and manipulated or stored there, and that when foreign merchandise is finally "sent [out] into [the] customs territory of the United States it shall be subject to the laws and regulations of the United States affecting imported merchandise." 19 U.S.C. § 81c(a) (emphasis added). The CIT's interpretation effectively nullifies both the FTZ Act's commands

9

that: (1) merchandise may be admitted to a zone without being subject to the customs laws; and (2) that such customs laws and regulations apply only when the merchandise is finally sent out in the Customs Territory. Under the CIT's reading, customs laws under Title 19 (specifically 19 U.S.C. §§ 1313(j)(2) and 1313(r)(1)) operated on Plaintiff-Appellant's merchandise from the date it was admitted to the Zone, continuously until its withdrawal from the Zone for consumption (when taxes were paid). This interpretation works a partial repeal by implication of the FTZ Act's statutory command.[6]

The CIT itself acknowledged the "potential for friction" between its reading of the drawback deadline and the FTZ regime, Appx14, but made no effort to resolve it. It merely shrugged and held that any "inconsistency" was for Congress to remedy. *Id.* In reality, there is no inconsistency: "date of importation" may be interpreted in this case in a way which gives full effect to both the Tariff Act and the FTZ Act. The Court should reject the CIT's anomalous interpretation, which the government advances in its Response Brief, and hold that the "date of importation" was the date

---

[6] Repeals by implication are disfavored. *Posadas v. National City Bank*, 296 U.S. 497, 503 (1936). As noted in *Morton v. Mancari*, 417 U.S. 535, 550 (1974), "[i]n the absence of some affirmative showing of an intention to repeal, the only permissible justification for a repeal by implication is when the earlier and later statutes are irreconcilable." (citing *Georgia v. Pennsylvania R. Co.*, 324 U.S. 439, 456-57 (1945)).

King Maker withdrew the imported cigarettes from FTZ 36 for consumption and paid taxes thereon.

Sections 1313(j)(2) and 1313(r)(1) link drawback eligibility and timing to an importation that incurred duty- or tax-payment obligations – confirming Congress intended the clock to start only once duties or taxes are paid, not upon mere arrival. The five-year limitations period in § 1313(r)(1) is correspondingly measured from "the date on which merchandise on which drawback is claimed was imported." Read together, these provisions presuppose an importation event that triggers payment of duties – in other words, an importation into U.S. Customs Territory. Before goods leave an FTZ, no duties are owed or paid. It follows that the "importation" relevant to drawback cannot logically be the mere physical introduction of goods into a U.S. port (where they remain in an FTZ duty-free), but rather the subsequent importation in a legal sense when those goods enter the customs territory and taxes are paid— *i.e.*, the first payment which might be susceptible to a later drawback claim.

It is a fundamental canon that statutes sharing a common subject (here, the FTZ Act and the drawback statute) must be read in harmony wherever possible, so that each is given effect and neither undermines the other. The CIT's reading fails that test: it pits the drawback law against the FTZ law to the detriment of the latter. However, by interpreting "date of importation" contextually to mean the date of withdrawal from the FTZ (when duties are paid), the correct meaning and goals of

both statutes are preserved. Under this harmonious construction, an importer who *withdraws FTZ goods for consumption* can then claim drawback within five years of that withdrawal/payment date. Additionally, the FTZ Act's suspension of customs laws is respected (no customs deadlines run during zone storage), and the drawback statute still imposes a firm five-year limit – only now measured from the proper *accrual* point, once the duty has been imposed and the right to refund is viable. Far from "rewriting" the statute, this interpretation gives effect to § 1313(r)(1)'s terms while avoiding bizarre consequences that Congress surely did not intend—*e.g.*, a claim limitations period that begins to run before accrual of the claim. The CIT's interpretation of "date of importation" cannot be sustained because it effects a partial repeal of the FTZ Act.

The Government's position elevates formalism over statutory purpose and produces results that the law never intended. It relies on century-old cases like *Cunard S.S. Co. v. Mellon*, which observed that "[i]mportation … consists in bringing an article into a country from the outside" and that an "actual bringing in" suffices "regardless of the mode." *Cunard S.S. Co. v. Mellon*, 262 U.S. 100, 122 (1923). But that broad statement – made in the context of Prohibition-era restrictions on alcohol importation – cannot be read in a vacuum, and it predates the FTZ Act by over a decade. *Cunard* addressed the concept of importation for purposes of assessing tariff or regulatory liability on goods physically arriving in U.S. territory. They drew the

12

then-familiar distinction between "importation" and "entry," confirming that formal entry at a customs house is "not of the essence" of importation.[7] King Maker does not dispute that general principle. However, those cases did not consider – and could not have foreseen – the unique context of FTZs, where Congress permits goods to reside within or adjacent to a port yet outside the customs territory, nor did those cases address the proper trigger for a post-importation refund scheme like "Modernized Drawback." 19 C.F.R. Part 190. The Government's heavy reliance on early judicial dicta, without accounting for the modern statutory landscape, only underscores the need for a contextual reading here. Statutory terms must be interpreted in light of the whole statutory scheme, especially when an evolving legal framework (like the FTZ program established in 1934[8]) creates a new context for an old term. The context makes clear that "date of importation" was not meant to commence a countdown in advance of duty payment.

Of course, CBP's own regulations recognize that default definitions yield if "the context in which they are used requires a different meaning." 19 C.F.R. § 101.1. This is precisely such a case. In context, "date of importation" in 19 U.S.C.

---

[7] In the context of the FTZ Act, an item unladen from an arriving vessel might never pass through the Customhouse at all. Upon unlading, it may be taken in bond to an FTZ, from whence it might be exported without the act of making entry or payment of duty. Thus, the definition of "date of importation" in *Cunard, supra,* is not a "one size fits all" formulation fitting to every case.

[8] *See e.g.,* Act of June 18, 1934, Ch. 590, § 3, 48 Stat. 999 ("FTZ Act").

§ 1313(j)(2) and (r)(1) cannot sensibly mean the moment a vessel arrives at port with intent to unlade; rather, it must refer to the point at which the goods enter U.S. commerce and incur customs duties or excise taxes.

To be clear, Section 313 of the Tariff Act and the FTZ Act are not irreconcilable. Plaintiff-Appellant's reading is the one compelled by the context of the subject transactions. By defining "date of importation" in this case, as the date Plaintiff-Appellant's merchandise was withdrawn from the FTZ for consumption, the meaning and goals of both statutes are preserved.

## III. Avoiding Absurd and Anomalous Results Requires Finding that the Drawback Clock Cannot Start Before a Right Accrues.

Applying the lower court's 'date of importation' definition creates a temporal paradox – the statutory clock begins running before duties are paid and a drawback right even arises. This outcome makes little sense in the context of duty refunds and Congress could not have intended such an absurd and anomalous result.[9]

Fundamentally, a claim for a refund of import duties cannot accrue *before* those duties have been paid. Until an importer actually pays duties or taxes, there is

---

[9] *See Epic Sys. Corp. v. Lewis,* 584 U.S. 497, 502 (2018) (holding that courts have a "duty to interpret Congress's statutes as a harmonious whole rather than at war with one another." "The canon against reading conflicts into statutes is a traditional tool of statutory construction."); *Frazier v. McDonough*, 66 F.4th 1353, 1358 (Fed. Cir. 2023) ("Constructions of statutes and regulations that lead to anomalous results are 'to be avoided if at all possible.'") (quoting *Pitsker v. Off. of Pers. Mgmt.*, 234 F.3d 1378, 1383 (Fed. Cir. 2000)).

nothing to refund and no claim to be made. It would be absurd to start the clock on a drawback limitations period before the predicate event giving rise to the claim (the underlying duty payment) has even occurred.

Under 19 U.S.C. § 1313(j)(2) and (r)(1), a drawback claimant must file for a refund "not later than 5 years after the date on which the merchandise on which drawback is claimed was imported," or else the claim is "considered abandoned." The CIT deemed this language unambiguous and, invoking Customs' general definition of "date of importation," equated it to the moment the goods "arrive[] within the Customs territory" or the vessel "arrives within the limits of a port." Appx12-Appx13. In the CIT's view, the statutory limitation period was running at all times between the cigarettes' admission into the FTZ in September 2012 and February 2013, when King Maker withdrew the cigarettes from the FTZ and paid taxes on them. The consequence of this holding is that King Maker's drawback claims – filed within five years of paying the duties – were nonetheless deemed time-barred. This result is not only counterintuitive, but also both absurd and anomalous. It flouts the basic principle that a legal claim cannot be time-barred *before* it comes into existence. A claim to refund duties or taxes does not exist until duties or taxes have been paid, and it is anomalous to interpret a limitations clock as starting to tick before the would-be claimant owes or pays the very duties to be refunded.

In the context of other statutes of limitations, it is well understood that, at a minimum, the events giving rise to a claim—*i.e.,* the claim's "accrual" [10]—must have arisen before the statute of limitations time begins to run. In *Corner Post, Inc. v. Bd. of Governors of the Fed. Rsrv. Sys.,* a case involving the APA's six-year statute of limitations, the Supreme Court observed:

> "Accrue" had a well-settled meaning in 1948, as it does now: A "right accrues when it comes into existence," *United States v. Lindsay*, 346 U.S. 568, 569—*i.e.,* "when the plaintiff has a complete and present cause of action," *Gabelli v. SEC*, 568 U.S. 442, 448. This definition has appeared "in dictionaries from the 19th century up until today," which explain that a cause of action accrues when a suit may be maintained thereon. 568 U.S., at 448. Thus, a cause of action does not become **complete and present**—it does not accrue—"until the plaintiff can file suit and obtain relief." *Bay Area Laundry and Dry Cleaning Pension Trust Fund v. Ferbar Corp. of Cal.*, 522 U.S. 192, 201. Contemporaneous legal dictionaries explained that a claim does not "accrue" as soon as the defendant acts, but only after the plaintiff suffers the injury required to press her claim in court.
>
> The Court's precedent treats this definition of accrual as the "standard rule for limitations periods," *Green*, 578 U.S., at 554, 136 S. Ct. 1769, 195 L. Ed. 2d 44, and the Court has "repeatedly recognized that Congress legislates against" this standard rule, *Graham County Soil & Water Conservation Dist. v. United States ex rel. Wilson*, 545 U.S. 409, 418, 125 S. Ct. 2444, 162 L. Ed. 2d 390. Conversely, the Court has "reject[ed]" the possibility that a "limitations period commences at a time when the [plaintiff] could not yet file suit" as "inconsistent with basic limitations principles." *Bay Area Laundry*, 522 U.S., at 200, 118

---

[10] *See Cada v. Baxter Healthcare Corp.*, 920 F.2d 446, 450 (7th Cir. 1990) ("Accrual is the date on which the statute of limitations begins to run."); Jenna M. Fischer, The Limits of Statutes of Limitations, 16 SW. U. L. REV. 1, 3 (1986) ("Accrual denotes the point when an action can be maintained.").

S. Ct. 542, 139 L. Ed. 2d 553. The Court will not reach such a conclusion "in the absence of any such indication in the text of the limitations period." *Green*, 578 U.S., at 554, 136 S. Ct. 1769, 195 L. Ed. 2d 44.

603 U.S. 799, 800-801 (2024) (emphases added).[11]

Here, the CIT's interpretation starts the clock at a point when King Maker had no claim to assert – *i.e.,* when its cigarettes were warehoused in an FTZ, no tax had been paid, and no drawback claim, nor information thereon, was available. Before duties are paid, King Maker lacked any "**complete and present**" cause to seek a refund. The *Corner Post* decision provides that a statutory time limit does not commence upon an agency's issuance of a rule, but only when that rule injured the particular plaintiff; a limitations period, the Court explained, cannot start until the claimant "is injured" and has a cause of action to assert. *Corner Post, Inc. v. Bd. of Governors of the Fed. Rsrv. Sys.*, 603 U.S. 799. Similarly, here, reading "5-year period beginning on the date of importation" to commence on the FTZ admission date (when no duty was owed or paid) divorces the clock from any actual injury (the payment of monies) or event to inform a subsequent drawback claim. It weaponizes the statutory deadline to preclude lawful claims rather than using it to guard against

---

[11] The purpose of statutes of limitations is to protect defendants from stale claims. *United States v. Memphis Cotton Oil Co.*, 288 U.S. 62 (1933); *Arellano v. McDonough*, 1 F.4th 1059 (Fed Cir. 2021). Defining "date of importation" in this case as the date the goods were withdrawn from the FTZ for consumption and taxes paid thereon does no violence to this principle, as the drawback statute generally requires claimants to file drawback claims within 5 years of the date duties or taxes are paid.

truly stale claims as Congress intended. The limitation period for King Maker to seek a refund of taxes it paid cannot logically begin to run before the taxes are paid.[12]

The text and purpose of the drawback statute confirm that Congress could not have meant to trigger the countdown before a duty or tax refund claim arises. Congress designed duty drawback as a mechanism to refund duties that have been paid on imports when certain conditions (like importation and exportation of substitute goods) are met. The Federal Circuit has underscored this principle, noting that a "drawback" claim inherently "is a customs transaction involving the <u>refund of any</u> **<u>payments</u>** <u>that were made</u> upon the importation of a good." *Nat'l Ass'n of Mfrs. v. Dep't of the Treasury*, 10 F.4th 1279, 1281 (Fed. Cir. 2021) (emphasis added). Correspondingly, "[a] tax that has never been paid or determined cannot be said to have been 'drawn back,'" because if no duty was paid, "there would be no refund to be

---

[12] As the Second Circuit has held, the "purpose [of statutes of limitations] is to prevent stale claims," reasoning that:

> … it would make no sense for a statute of limitations to begin to run before the plaintiff even has a claim: A claim that has not yet accrued could never be considered stale. Thus, in the limitations context, it makes sense to link the standard for 'discovering' the facts of a violation to the plaintiff's ability to make out or plead that violation. Only after a plaintiff can adequately plead his claim can that claim be said to have accrued, and only after a claim has accrued can the statute of limitations on that claim begin to run.

See e.g., *City of Pontiac Gen. Emps. Ret. Sys. v. MBIA, Inc.,* 637 F.3d 169, 174 (2d Cir. 2011).

paid out" at all. *Id.*, 10 F.4th at 1285. By starting the five-year clock before any duties are paid, the CIT's interpretation conflicts with this basic definition of drawback and defies logic. It creates a scenario where the right to seek a refund is supposedly "running" even though, at that early point in time, the importer has paid nothing and thus has no refundable stake. Such a result is inherently anomalous.

In other words, a drawback claim presupposes an earlier payment of import duties or taxes, which the government later refunds when the statutory criteria are satisfied. King Maker's own claims here illustrate the point. None of the 21 cigarette shipments incurred any duties at the time of FTZ admission. Appx30-Appx45. Only when King Maker withdrew each shipment for consumption – filing a consumption entry and tendering the applicable duties, taxes, and fees – did any payment occur and any potential refund entitlement attach. Yet the CIT's rule would anomalously measure the five-year limitations period from an earlier event (*i.e.*, the FTZ admission), when there were no "duties, taxes, and fees" paid, and thus <u>no amounts to refund</u> (nor to identify in a drawback claim). The statute's phrase "merchandise on which drawback is claimed," 19 U.S.C. § 1313(r), necessarily refers to merchandise that has been entered and taxed – otherwise, no drawback could ever be "claimed" on it. Starting the clock before that moment produces a self-defeating scheme: it demands an importer to seek a refund of duties that, at the time the clock begins, the

importer has neither paid nor even calculated. Such a reading makes no sense and cannot reflect Congressional intent.

Indeed, under the CIT's interpretation, the limitation on filing a drawback claim would not merely be difficult to meet in some cases – it would be impossible to meet in entire classes of cases. Consider an importer who stores goods in an FTZ for more than five years before withdrawing them for U.S. consumption and paying duties. Under the trial court's view, the five-year window to claim drawback would have closed while the goods were still in the FTZ, duty-unpaid. By the time the importer actually pays duties and exports substituting merchandise, any claim for refund is already "considered abandoned" by operation of § 1313(r)(1). The importer, having done nothing wrong except making lawful use of the FTZ's warehousing provisions, is barred from obtaining the drawback refunds that the statute on its face promises for exported merchandise. This result cannot be what Congress intended when it created a generous five-year limitations period for drawback claims.[13]

A far more rational interpretation is that the clock starts when the imported goods are entered into U.S. Customs territory and taxes are paid, giving the claimant

_____

[13] Five years is among the longest limitations periods in customs law; it accommodates the practicalities of modern commerce, where imported goods might be warehoused or used in manufacturing for extended periods before export opportunities arise. It is implausible that Congress designed this lengthy window only to have it begin and end before the claimant ever pays the duties eligible for refund.

up to five years from that date to export substitute goods and claim the refund. A claim filed within five years of duty payment is not "stale" in any sense – the payment is recent (within the five-year period Congress anticipated); the export transaction will have occurred within that span; and all evidence (entry records, duty amounts, export documents) is readily obtainable. The very purpose of a statute of limitations – to prevent truly stale claims where evidence is lost and parties have moved on – is not served by cutting off claims that are filed within five years of the crucial transaction (duty payment) simply because more than five years have passed since a much earlier, legally insignificant event (the FTZ admission). In short, nothing in the five-year limitations provision suggests that Congress intended to trap diligent claimants by measuring the period from an event unconnected to the accrual of their rights.

Additionally, the use of an FTZ here provides a unique context for the duty drawback statute to operate under. However, Plaintiff-Appellant is not asking the Court to stray from the original legislative intent of the FTZ Act, nor the legislative intent of the duty drawback statute. The FTZ Act prohibits application of customs law on merchandise in an FTZ, while the duty drawback statute allows importers to seek a refund of duties that have been paid. In *Nat'l Ass'n of Mfrs. v. Dep't of the Treasury*, this Court observed that for the duty drawback statute to "include[s] excise tax liability on exports that have neither been 'paid or determined,' is contrary to the

clear intent of Congress." *Nat'l Ass'n of Mfrs. v. Dep't of the Treasury*, 10 F.4th 1279 (Fed. Cir. 2021). Using the CIT's definition of the "date of importation" would result in an anomalous interpretation of the statutes straying from the legislative intent of both statutes. However, if the date of importation began when the goods enter the Customs territory and become subject to the operation of the Customs laws – as Plaintiff-Appellant contends – then the legislative intent of both statutes would be preserved because customs laws would not apply to merchandise in the FTZ and the refund would only be claimed after the tax has been paid.[14]

In sum, the lower court's reading imposes a limitations period that expires before King Maker's drawback right ever arises – an absurd result Congress could not have intended. Only by reading 'date of importation' as the date of duty-paid entry (as context demands) can the Court avoid nullifying the FTZ Act's protections and give effect to both statutes.

---

[14] *See also BMW Mfg. Inc. v. United States,* 241 F.2d 1357, 1363 (Fed. Cir. 2001) (noting "[c]onversely, the legislative history of § 81c(a) demonstrates that the exemption therein is targeted at duties and taxes that attach upon formal entry into the United States customs territory. *See* S. Rep. No. 81-1107, at 3-4 (1949), reprinted in 1950 U.S.C.C.A.N. 2533, 2535-36 ("Duties and taxes would be payable ... only if and when the merchandise was sent into customs territory.")).

# CONCLUSION

For the reasons set forth herein and in its principal brief, Plaintiff-Appellant King Maker Marketing Inc. submits that the decision of the U.S. Court of International Trade should be reversed, and this matter remanded with instructions for the company's protest claim to be allowed, and substitution unused merchandise drawback of excise taxes paid.

Respectfully submitted.

   /s/ John M. Peterson
John M. Peterson
*Counsel of Record*
Patrick B. Klein
Sanzida Talukder
NEVILLE PETERSON LLP
55 Broadway, Suite 2602
New York, NY 10006
(212) 635-2730
jpeterson@npwny.com

Richard F. O'Neill
NEVILLE PETERSON LLP
701 Fifth Ave, Ste. 4200-2159
Seattle, WA 98104
(206) 905-3648
roneill@npwny.com

*Attorneys for Plaintiff-Appellant*

October 2, 2025

## CERTIFICATE OF COMPLIANCE WITH
## TYPE-VOLUME LIMITATIONS

I hereby certify that the foregoing Reply Brief of Plaintiff-Appellant, King Maker

Marketing, Inc., complies with the relevant type-volume limitation of the Federal

Rules of Appellate Procedure and Federal Circuit Rules. It was prepared using a

proportionally-spaced typeface and includes 5,945 words.


   /s/ John M. Peterson
        John M. Peterson

October 2, 2025

## CERTIFICATE OF SERVICE

I hereby certify that on this 2nd day of October, 2025, I electronically filed the fore-going brief on behalf of King Maker Marketing, Inc., with the Clerk of the Court for the United States Court of Appeals for the Federal Circuit through the Court's CM/ECF system. Participants in this case who are registered CM/ECF users will be served by the appellate CM/ECF system.

/s/ John M. Peterson
John M. Peterson

October 2, 2025